This opinion is uncorrected and subject to revision before publication in the New York Reports.
-----------------------------------------------------------------

No. 130
The People &c,.
          Respondent,
       v.
Raymond Denson,
          Appellant.



          Kerry S. Jamieson, for appellant.
          Christopher P. Marinelli, for respondent.



FAHEY, J.:

          Defendant was convicted after a nonjury trial of, inter alia, attempted kidnapping in the second degree. On this appeal, we are asked to decide, among other issues, whether the trial court erred in admitting evidence of defendant's prior conviction of a sex crime committed against a child, as relevant to his

- 1 -

intent in the current offense.  Defendant also challenges the legal sufficiency of the People's evidence.  We hold that the trial court did not err in admitting evidence of defendant's prior conviction.  We further hold that the evidence is legally sufficient to sustain the conviction of attempted kidnapping in the second degree.

## I.

The victim of the offense was a 10-year-old girl who lived with her mother in an apartment located above the hardware store where defendant worked.  The evidence at trial established that defendant often exchanged greetings with the victim and her mother as they entered or exited the building.  When the victim began junior high school in 1998, her mother allowed her to walk alone to and from the school, which was close to their apartment building.  During this time, defendant frequently approached the victim as she walked home from school, and he repeatedly offered to take her out for ice cream, or to take her ice skating or to the movies.  The victim felt "bothered" by defendant's conduct and rejected his requests.  The victim estimated that defendant made offers to take her out between 30 and 40 times.

On August 29, 1998, when the victim was standing outside the hardware store while her mother was trying to hail a taxi, defendant approached them.  The victim and her mother testified that defendant said that the victim was upset with him because he had not taken her ice skating or to the movies.

Defendant then stated that he wanted to take the victim to see a film.

On September 6, 1998, the victim heard a knock at the door to her apartment. Her mother was in the shower. She saw no one at the door when she looked through the peephole, but when she opened the door slightly, defendant was standing there. The victim testified that defendant was "dressed up" in a red, "crushed velvet or felt" outfit with red shoes, a "beret hat and a black shirt." He asked the victim whether she was ready to go to the movies. The victim said that she was not. Defendant asked her if she was busy that week, and the victim said that she was. She then closed the door. This incident took place on a Sunday, when the hardware store was closed. Furthermore, a buzzer access system prevented unauthorized entry to the apartment building, and defendant had not buzzed the victim's apartment to gain entry.

On September 11, 1998, the victim came home from school alone as usual, entered the apartment building, and began walking up the stairs. She then saw defendant exiting a door to the basement, which the hardware store used for storage. The victim said "hello" to defendant. Defendant, who was standing two to three feet away from the victim, said, "Here's the keys to my apartment," and he began to take the chain holding his keys from around his neck. The victim refused to take the keys, and defendant asked her three times if she was sure. When she

repeated her refusals, defendant told her to meet him downstairs later that day if she changed her mind and promised he would get her some ice cream.  The victim ran upstairs to her mother's apartment, feeling frightened.  Later that day, she told her mother what had happened, and her mother contacted the police.  A grand jury subsequently indicted defendant on charges of attempted kidnapping in the second degree (Penal Law §§ 110.00, 135.20) and endangering the welfare of a child (§ 260.10 [1]).

Before trial, the People sought to introduce evidence of defendant's 1978 sodomy conviction (see former Penal Law § 130.50), arising from his sexual abuse of his stepdaughter, as evidence of his intent with respect to the charge of attempted kidnapping in the second degree.  Defendant opposed the People's application.  The court held a lengthy Ventimiglia hearing (see People v Ventimiglia, 52 NY2d 350, 361-362 [1981]), during which it heard the testimony of an expert who testified on behalf of the People, as well as an expert who testified on behalf of defendant.  After the hearing, the trial court held that the evidence of defendant's prior conviction was admissible to prove defendant's intent.

During the ensuing nonjury trial, the victim and her mother testified with respect to the foregoing facts leading to defendant's arrest.  Defendant's estranged wife and her niece testified regarding defendant's sexual abuse of his stepdaughter. Defendant's estranged wife testified that defendant frequently

took his stepdaughter on outings in which he would dress up in a "dress suit" with a fur "round rim hat," and he would require his stepdaughter to dress up as well.  The same expert witnesses who testified at the Ventimiglia hearing also provided testimony at trial.

The court found defendant guilty as charged.  A divided Appellate Division affirmed (People v Denson, 114 AD3d 543 [1st Dept 2014]), and one of the dissenting Justices granted defendant leave to appeal to this Court.  We now affirm.

II.

Defendant contends that the trial court erred in allowing the People to introduce evidence of his 1978 sodomy conviction as evidence of his intent in the present offense.  We disagree.

"[T]he familiar Molineux rule states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Cass, 18 NY3d 553, 559 [2012]).  Where, however, "the proffered Molineux evidence is relevant to some material fact in the case, other than the defendant's propensity to commit the crime charged, it is not to be excluded merely because it shows that the defendant had committed other crimes" (id. at 560).  Although it is not an exhaustive list, evidence of a defendant's prior bad

acts may be admitted to prove the crime charged when the evidence
tends to establish:

> "(1) motive; (2) intent; (3) the absence of
> mistake or accident; (4) a common scheme or
> plan embracing the commission of two or more
> crimes so related to each other that proof of
> one tends to establish the others; and (5)
> the identity of the person charged with the
> commission of the crime on trial" (id.,
> citing People v Molineux, 168 NY 264, 293
> [1901]).

Here, the People asserted that defendant's prior
conviction was relevant to establish his intent with respect to
the charge of attempted kidnapping in the second degree.  In
assessing whether evidence of a defendant's prior criminal acts
should be admitted at trial, a trial court is required to engage
in a two-step analysis.  First, the trial court must determine
whether the People have "identif[ied] some material issue, other
than the defendant's criminal propensity, to which the evidence
is directly relevant" (Cass, 18 NY3d at 560).  If the People have
met that burden, the trial court must then "weigh the evidence's
probative value against its potential for undue prejudice to the
defendant" (id.; see People v Alvino, 71 NY2d 233, 242 [1987]).
"If the evidence has substantial probative value and is directly
relevant to the purpose -- other than to show criminal propensity
-- for which it is offered, the probative value of the evidence
outweighs the danger of prejudice and the court may admit the
evidence" (Cass, 18 NY3d at 560).

Inasmuch as defendant was charged with attempted

kidnapping in the second degree, the People were required to prove that he intended to "abduct" the victim, i.e., that he intended to prevent the victim's liberation "by either (a) secreting or holding [her] in a place where [she was] not likely to be found, or (b) using or threatening to use deadly physical force" (Penal Law §§ 135.00 [2]; 135.20).  The People proceeded on the theory that defendant intended to prevent the victim's liberation by secreting or holding her in a place where she was not likely to be found (see § 135.00 [2] [a]).  Thus, the only portion of Penal Law § 135.00 (2) that applies here is subsection (a).

During the Ventimiglia hearing, the People's expert witness testified that defendant's behavior toward the victim in this case closely resembled his pattern of behavior toward his stepdaughter.  The fact that defendant had frequently taken his stepdaughter out on "dates" akin to the outings defendant proposed to the victim here suggested to the People's expert that defendant had groomed his stepdaughter for sexual abuse and that defendant viewed his relationship with his stepdaughter as similar to an appropriate romantic relationship with an adult. The People's expert opined that defendant was reliving his relationship with his stepdaughter through his behavior toward the victim in this case, and that defendant's behavior toward the victim demonstrated that he was attempting to be alone with her and to groom her for a sexual relationship.  The People's expert

testified that defendant's prior offense was "critical" in understanding his intent in the current offense.

The People met their initial burden to demonstrate that defendant's prior conviction was relevant to his intent. Defendant's actions of attempting to give the victim the keys to his apartment were equivocal, and this was therefore not a case where defendant's intent could be easily inferred from his conduct (see Alvino, 71 NY2d at 242). Rather, the reason defendant invited the victim to his apartment was important in determining whether he had the requisite intent, i.e., whether he intended to prevent the victim's liberation by secreting or holding her there (see Penal Law § 135.00 [2] [a]).

Where, as here, the People have demonstrated that they wish to introduce the Molineux evidence for "a proper nonpropensity purpose, the decision whether to admit evidence of defendant's prior bad acts rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (People v Dorm, 12 NY3d 16, 19 [2009]; see Cass, 18 NY3d at 560; Alvino, 71 NY2d at 242).

During the Ventimiglia hearing, defendant's expert agreed that "repetition is a component featured to some perpetrators," and that the features that suggest repetition with respect to sex offenders were, among others, "similarity in physical characteristics of victim type" and "similar predator behaviors." Defendant's expert further agreed that there were

similarities between defendant's two victims, and that his
behavior demonstrated "some evidence of some ritualized aspect of
his functioning" and the "possibility of repetition."   She also
agreed with the People's expert that defendant displayed "high
fixation."

Importantly, upon questioning by the court during the
Ventimiglia hearing about whether there were differences between
the repetitious behavior of some sex offenders and a lay person's
notion of propensity evidence, defendant's expert agreed that
there were "differences between simple propensity and repetition
per se."   Furthermore, when asked by the court whether one could
"draw an inference of intent from the theory of repetition,"
defendant's expert testified that one could infer "the
probability of what [defendant's] motivation is and the
probability of what his goals are" from the repetition of his
behavior in the two offenses.

A trial court is "in the best position to evaluate the
evidence" when determining whether, in the court's discretion,
the probative value of the proferred Molineux evidence exceeds
the potential for prejudice to the defendant (People v Morris, 21
NY3d 588, 597 [2013]).   "[T]he trial court's decision to admit
the evidence may not be disturbed simply because a contrary
determination could have been made or would have been reasonable.
Rather, it must constitute an abuse of discretion as a matter of
law" (id.).

In its written decision and order, the trial court held that the evidence presented by the People demonstrated "more than criminal propensity, but . . . an actual link between the two offenses." The court noted that the victims of the two offenses "so closely resemble[d] each other . . . as to be virtual twins," and that "[c]ertain distinctive patterns of behavior employed by the Defendant on each occasion match to an extraordinary degree." Moreover, the court concluded that the expert testimony at the Ventimiglia hearing demonstrated that "[d]efendant was not merely re-offending, but in fact suffered from a fixated fantasy" and had "transferred his fixation and fantasy from victim number one to victim number two and [was] now re-living the previous sexual encounter." Based on that expert testimony, the court concluded that "the Defendant's fixation with the first victim is proof of his intent with regard to the second." The court stated that it was aware of the potential for prejudice, but was "satisfied that, with careful limitations and adequate caution to the jury, some facts from the earlier case can be utilized to show a unique connection between the two offenses" and that expert testimony would help a jury "to understand what factors should be considered, or discounted, in assessing those facts and that connection." Under the circumstances presented here, we cannot say that the trial court abused its discretion as a matter of law in admitting evidence of defendant's prior conviction.

III.

Defendant further contends that his conviction of attempted kidnapping in the second degree is not supported by legally sufficient evidence because the People failed to prove that he had the requisite intent and that he came dangerously near to completing the crime.  We disagree.

A verdict is legally sufficient when, viewing the facts in the light most favorable to the prosecution, " 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (People v Danielson, 9 NY3d 342, 349 [2007], quoting People v Acosta, 80 NY2d 665, 672 [1993]).  A sufficiency review requires the Court to "marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (Danielson, 9 NY3d at 349).

With respect to proof of defendant's intent, as noted, the People were required to prove that defendant intended to prevent the victim's liberation by secreting or holding her in a place where she was not likely to be found (see Penal Law §§ 135.00 [2] [a]; 135.20).  Defendant's intent may be inferred from his actions and the surrounding circumstances (see People v Bracey, 41 NY2d 296, 301 [1977], rearg denied 41 NY2d 1010 [1977]).  This Court has recognized that "circumstantial evidence of intent is often essential to prosecution for an attempted

crime because . . . such evidence may be the only way of proving intent in the typical case of criminal attempt" (People v Lamont, 25 NY3d 315, 319 [2015] [internal quotation marks omitted]).

The victim's mother testified that she did not know defendant's name or where defendant's apartment was located until after she contacted the police, and defendant does not dispute that his apartment was a place where the victim was unlikely to be found. The remaining requirements to satisfy the intent element may be inferred from defendant's conduct (see Bracey, 41 NY2d at 301). Defendant engaged in increasingly bizarre and frightening behavior toward the 10-year-old victim, culminating in an invitation to his apartment, a nonpublic place. Moreover, defendant's prior conviction was probative of his intent in inviting the victim to his apartment. The People's expert opined at trial that with his invitation, defendant was attempting to isolate the victim in order to groom her for a sexual encounter. Viewing the facts in the light most favorable to the People, we conclude that there was a valid line of reasoning and permissible inferences from which a reasonable factfinder could have concluded that defendant had the requisite intent (see Danielson, 9 NY3d at 349).

With respect to defendant's contention concerning the actus reus element of the crime, this Court has held that for a defendant to be guilty of an attempted crime, the defendant "must have engaged in conduct that came dangerously near commission of

the completed crime" (People v Naradzay, 11 NY3d 460, 466 [2008] [internal quotation marks omitted], rearg dismissed 17 NY3d 840 [2011]).  The defendant's conduct "must have passed the stage of mere intent or mere preparation to commit a crime[,]" but the defendant need not have taken "the final step necessary" to accomplish the crime in order to be guilty of an attempted crime (People v Mahboubian, 74 NY2d 174, 189-190 [1989]; see Naradzay, 11 NY3d at 466).

The People were required to prove that defendant came dangerously near to abducting the victim (see Penal Law § 135.20).  As we have acknowledged, the statutory definition of "abduct" is complex (see People v Leonard, 19 NY3d 323, 326-327 [2012]).  Penal Law § 135.00 (2) provides, as relevant here, that to "abduct" means "to restrain a person with intent to prevent his liberation by . . . secreting or holding him in a place where he is not likely to be found."  Section 135.00 (1) in turn provides that to "restrain" means

> "to restrict a person's movements
> intentionally and unlawfully in such a manner
> as to interfere substantially with [her]
> liberty by moving [her] from one place to
> another, or by confining [her] either in the
> place where the restriction commences or in a
> place to which [she] has been moved, without
> consent and with knowledge that the
> restriction is unlawful."

The statute further provides that a victim may be "so moved or confined 'without consent' when such is accomplished by[,]" as relevant here, "any means whatever, including acquiescence of the

victim, if [she] is a child less than [16] years old . . . and the parent, guardian or other person or institution having lawful control or custody of [her] has not acquiesced in the movement or confinement" (§ 135.00 [1] [b]).

The victim's mother testified at trial that she did not give defendant permission to take the victim anywhere. Defendant contends, however, that assuming he did not plan to accompany the victim to his apartment, there were multiple steps she would have had to take before she would have arrived there, such as learning his address and obtaining transportation to his apartment. Defendant therefore asserts that the People failed to prove that he was dangerously near to completing the crime. Defendant further contends that he did not come dangerously close to obtaining the victim's acquiescence because the evidence demonstrated that she was "virtually impervious" to his repeated invitations and would never have agreed to go to his apartment.

These contentions amount to an assertion that where a defendant attempts to kidnap a child through that child's acquiescence (and not through the use of force, intimidation, or deception), whether the defendant has come dangerously near to accomplishing the crime is dependent upon the sophistication, resistance, or other particular characteristics of the child victim. Our analysis with respect to whether a defendant has come dangerously near to completing a crime, however, has focused primarily on the conduct of the defendant, not his or her

intended victim (see e.g. People v Clyde, 18 NY3d 145, 155 [2011], cert denied ___ US ___, ___, 132 S Ct 1921 [2012]; People v Cano, 12 NY3d 876, 877 [2009], rearg denied 13 NY3d 766 [2009]; Naradzay, 11 NY3d at 467-468; Mahboubian, 74 NY2d at 191-192). The same principle applies here. Thus, in determining whether the People established by legally sufficient evidence that defendant came dangerously near to completing the kidnapping, we focus on the steps defendant took to accomplish the crime, rather than on the actions or disposition of the particular child victim, and whether defendant's conduct was "potentially and immediately dangerous" (Mahboubian, 74 NY2d at 191).

The People presented evidence that defendant repeatedly tried to convince the victim to accompany him on various outings, asking her 30 to 40 times as she walked home alone from school. Defendant arrived at the victim's apartment unannounced and uninvited and asked her if she was ready to go to the movies. He was dressed up for the occasion, and he somehow had circumvented the buzzer system used to gain access to the apartments inside the building. Moreover, on that occasion, defendant showed up at the victim's door on a Sunday, when the hardware store was closed. Five days later, defendant approached the victim while she was alone in the stairwell of the building, came within two or three feet of her, and attempted to give her the keys to his apartment. When she refused, he asked her three times if she was sure, and then told her to meet him later if she changed her mind

and that he would give her ice cream.  Viewing the evidence in the light most favorable to the People, a rational factfinder reasonably could conclude that defendant "crossed 'the boundary where preparation ripens into punishable conduct' " (Naradzay, 11 NY3d at 467, quoting Mahboubian, 74 NY2d at 190).

Defendant further contends that because the steps remaining to accomplish the crime were within the control of the victim, and not within his own control, the evidence is not legally sufficient to establish an attempt.  Defendant relies on cases where this Court noted that the conduct of the defendants "had gone to the extent of placing it in their power to commit the offense unless interrupted" (Mahboubian, 74 NY2d at 191 [internal quotation marks omitted]; see Naradzay, 11 NY3d at 467; Acosta, 80 NY2d at 671).  While that is a factor to consider in determining whether a defendant has come dangerously near to completing the crime, we have not held that for evidence of an attempt to be legally sufficient, completion of the crime must be solely within the power of the defendant.

Indeed, under defendant's rationale, a defendant could not be guilty of an attempted crime where it was impossible for the defendant to complete the crime through actions within his or her own power.  This is contrary to well-settled law (see Penal Law § 110.10).  Applying defendant's rationale to an attempted kidnapping where, as here, the defendant attempts to complete the crime through the acquiescence of a child victim, a defendant

could never be guilty of attempt because the crime could not be completed without the acquiescence of the victim.  That is, although the victim could not legally consent (see Penal Law § 135.00 [1] [b]), defendant argues, in essence, that the People were required to prove that she would have consented in order to show that defendant attempted to kidnap her.  We therefore reject defendant's rationale.  Rather, under the circumstances of this case, a rational factfinder could conclude that defendant had moved beyond mere preparation to the point that his conduct was potentially and immediately dangerous (see Naradzay, 11 NY3d at 467; Mahboubian, 74 NY2d at 190-191).  We therefore conclude that the evidence is legally sufficient to establish defendant's guilt of attempted kidnapping in the second degree.

## IV.

Defendant's remaining contentions do not warrant reversal.  Defendant was not charged with any other crime with which the kidnapping charge could have merged, and therefore his contention that his kidnapping conviction should be dismissed pursuant to the merger doctrine is without merit (see People v Rios, 60 NY2d 764, 766 [1983]).  Defendant's further contention that the trial court should have granted his motion to suppress statements he made to law enforcement involves mixed questions of law and fact, and because there is record support for the determinations made below, those determinations are beyond the review power of this Court (see People v Cruz, 90 NY2d 961, 962

[1997]; <u>People v Harrison</u>, 82 NY2d 693, 694 [1993]; <u>People v</u>
<u>Nunez</u>, 80 NY2d 858, 860 [1992]).

Accordingly, the order of the Appellate Division should
be affirmed.

People v Raymond Denson

No. 130

PIGOTT, J.(dissenting):

Defendant here is in obvious need of psychological help; but, under the circumstances of this case, he is not guilty of attempted kidnaping in the second degree (Penal Law § 135.20).

The incident that forms the basis of defendant's attempted kidnaping conviction is laid out in the majority's telling:  on September 11, 1998, after offering the victim keys to his apartment and her refusal, he told her to meet him later that day if she changed her mind and he would buy her some ice cream - the latter being the same type of offer he had made to her some 30 to 40 times previously.

Tired of this conduct, her mother contacted the police. Three days later, a detective contacted the defendant's employer and advised him of mother's complaint.  Defendant's boss told the detective he would send defendant to the precinct when he came to work.  Defendant willingly went to the precinct and spoke with police about the incidents.  As a result, he was charged with endangering the welfare of a child (Penal Law § 260.10 [1]) and harassment (Penal Law § 240.26 [3]).  The misdemeanor information recited the facts as described in the majority's opinion.

In October 1998, he was arraigned on those charges and

- 1 -

pled not guilty, rejecting an offer to plead to the charges. Later, in an undated indictment in 1999, defendant's harassment charge became an attempted kidnaping in the second degree charge, with no change in the underlying facts. The only thing that had changed was that the People learned that, some 20 years earlier, defendant had been convicted of sexually abusing his eight-year-old step-daughter.

Prior to defendant's trial, the People made a Ventimiglia/Molineux application to permit them to introduce evidence of that prior sex conviction. The Court initially denied that application. Having failed to prevail on their original application, the People then made an in limine proffer, this time including an expert affidavit. The expert opined that defendant, a convicted child molester, was "trying to relive his sexual pattern" that he had engaged in with his step-daughter, some 20 years earlier. The court, acknowledging the highly prejudicial value of this testimony, permitted the People's introduction of this testimony to demonstrate that the instant offense, as described by the expert, was "part of a fixation, a repetitive pattern . . . that results not from merely re-offending, but from actually re-living as a result of transference."

In my view, the court abused its discretion in allowing in evidence of the prior conviction. While, as the expert suggested, it may have shown that defendant was a convicted child

molester who was engaging in pattern behavior similar to that of his prior sex conviction, it was not relevant in a case where no sex crime was involved or charged. Nor can it be relevant to show that defendant intended to kidnap the child, as his prior conviction did not include any kidnaping.

Further, viewing the evidence in the light most favorable to the People, they failed to establish an attempted kidnaping beyond a reasonable doubt. "A person is guilty of kidnaping in the second degree when he abducts another person" (Penal Law § 135.30). As relevant here, "abduct", as defined by Penal Law § 135.00 (2), "means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found. . .". In turn, restrain, means "to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful."

"A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). Conduct does not rise to the level of attempt unless the defendant's actions come "dangerously close" or "very near" to accomplishing the intended crime (People v Naradzay, 11 NY3d

460, 466 [2008]; <u>People v Mahboubian</u>, 74 NY2d 174, 190-91 [1989]).

The People here were required to prove that defendant came dangerously close to "abducting" the child. A simple offer of apartment keys clearly is not enough to show an intent to restrain a child.

In short, defendant offered the child his apartment keys, she did not accept them and she walked away. While defendant clearly engaged in alarming behavior with this child prior to and during this encounter, his actions, even viewing them in a light most favorable to the People, did not come "dangerously close" to an attempted kidnaping. The result - we had a person in need of psychological treatment in one of our prisons without it.

For these reasons, I dissent and would vote to reverse.

* * * * * * * * * * * * * * * * *

Order affirmed. Opinion by Judge Fahey. Chief Judge Lippman and Judges Rivera, Abdus-Salaam and Stein concur. Judge Pigott dissents in an opinion.

Decided October 27, 2015