People v Ramirez (2019 NY Slip Op 08260)





People v Ramirez


2019 NY Slip Op 08260


Decided on November 14, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 14, 2019

Acosta, P.J., Richter, Mazzarelli, Webber, Kern, JJ.


10154 1320/11

[*1] The People of the State of New York, Respondent,
v
Yenfri Ramirez, Defendant-Appellant.


Barry A. Weinstein, Bronx, for appellant.
Darcel D. Clark, District Attorney, Bronx (T. Charles Won of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Barbara F. Newman, J.), rendered May 29, 2014, convicting defendant, after a jury trial, of murder in the second degree, manslaughter in the first degree, assault in the second degree and criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of 44 years to life, unanimously affirmed.
The court properly denied defendant's motion to suppress the physical evidence recovered after his arrest. The record establishes that there was probable cause for defendant's arrest. At the suppression hearing, the People presented relevant evidence as follows: On the evening in question, defendant was stopped by police after the officer heard over the radio, via an anonymous tip, that there had been a shooting and that the shooter was an Hispanic male wearing a black and white White Sox baseball cap and a green jacket. The officer testified that while in his vehicle, about 5 blocks from the shooting location, he observed a person, later identified as defendant, who fit the description of an Hispanic male, wearing a black and white White Sox baseball cap and a green jacket, walking on the street. He testified that he saw defendant slow down behind the police vehicle, momentarily stop walking, take out a cell phone and put it to his ear, and then proceed to walk along the street. The officer further testified that after watching defendant for about 20 seconds, he and another officer exited their vehicle and stopped defendant on the sidewalk, about 10 or 15 feet away from where defendant had stopped and taken out his phone. Defendant was not handcuffed or arrested. The officers searched defendant but recovered no weapons or other evidence on his person so they released defendant, who left and walked away. Shortly thereafter, police officers found a gun approximately one foot away from where defendant had momentarily stopped walking and taken out his phone. Upon the recovery of the gun, defendant was located about one block away from where he was initially stopped. He was then stopped for a second time and arrested.
The court properly determined that there was probable cause to arrest defendant and therefore, properly denied defendant's suppression motion, based on all of the factors known to the police. These factors include that defendant's clothing and physical appearance matched the description of the man involved in the shooting, the close spatial and temporal proximity of where defendant was found in relation to where the shooting had just occurred and the recovery of the gun in the vicinity where defendant, who fit the description of the shooter, had just been observed walking, momentarily stopping and walking again. Inasmuch as the police possessed probable cause to arrest the defendant when they did so, the physical evidence recovered from the defendant's person such as his jacket, scarf, hat and phone, were properly recovered in a search incident to a lawful arrest (see People v Lane, 10 NY2d 347, 353 [1961]). Moreover, as the arrest was legal, we reject defendant's argument that the identifications should be suppressed as the fruit of an unlawful detention.
To the extent defendant argues that his motion for suppression should have been granted on the ground that the police did not have reasonable suspicion to conduct the initial stop and frisk, we need not reach such issue as the police did not recover any evidence as a result of the [*2]initial stop and frisk of the defendant (cf. People v De Bour, 40 NY2d 210 [1976]). In fact, after the initial stop and frisk, defendant was released and allowed to leave. It was only after defendant had already been released and the police recovered the gun in the vicinity of where defendant had momentarily stopped and put his phone to his ear that defendant was then stopped for a second time and arrested.
Defendant's assertion that his suppression motion should have been granted on the ground that the witnesses at the suppression hearing lacked credibility is without merit as the court's credibility determinations are entitled to deference in light of its opportunity to observe the witnesses (see People v Prochilo, 41 NY2d 759, 761 [1977]). In any event, we see no basis to reject the police testimony as incredible.
The court also properly denied defendant's motion to suppress the identification procedures used by the police, specifically, the photo array and the lineup. The People met their initial burden of establishing the reasonableness of the police conduct and the absence of any undue suggestiveness (see People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]) by, among other things, introducing color copies of the photo array and a lineup photo showing that the fillers used by the police reasonably resembled the defendant. Defendant failed to meet his burden to show that the procedures were unduly suggestive or that they unfairly singled him out (see id.; People v Mooney, 74 AD3d 617, 618 [1st Dept 2010], lv denied 15 NY3d 854 [2010]).
Defendant's argument that the verdict was not supported by legally sufficient evidence is unpreserved because defense counsel moved to dismiss the attempted murder count for reasons not raised on appeal and he did not seek dismissal of any other counts (see People v Hawkins, 11 NY3d 484, 492 [2008]). In any event, we find that the verdict was supported by legally sufficient evidence and comported with the weight of the evidence (see People v Denson, 26 NY3d 179, 188 [2015]; People v Danielson, 9 NY3d 342, 348 [2007]).
We find that the evidentiary trial rulings being challenged by defendant were all provident exercises of the court's discretion. In any event, any error involving any of these rulings was harmless in light of the overwhelming evidence of guilt (see People v Crimmins, 36 NY2d 230 [1975]).
The court properly found that the defendant was not deprived of his right to a fair trial due to the prosecutor's summation. While some of the prosecutor's comments might have been inappropriate, his summation as a whole "did not exceed the broad bounds of rhetorical comment permissible in closing argument" (People v Galloway, 54 NY2d 396, 399 [1981]).
Further, the court did not err in finding that juror number nine was not grossly unqualified, after a proper and thorough inquiry. After the court was informed that the juror wanted to speak with the court and that he had made certain Facebook postings about the trial proceedings and his feelings regarding same, the court properly questioned the juror, in the presence of the attorneys, regarding his Facebook postings and whether he could still be fair and impartial (see CPL 270.35(1); People v Buford, 69 NY2d 290, 299 [1987]). After the inquiry, the court found no reason to disqualify the juror and defendant has not provided any basis for disturbing the court's findings. Finally, we perceive no basis for reducing defendant's sentence.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 14, 2019
CLERK