People v Hone (2023 NY Slip Op 03263)

People v Hone

2023 NY Slip Op 03263

Decided on June 15, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 15, 2023

112166
[*1]The People of the State of New York, Respondent,
v
James A. Hone, Appellant.

Calendar Date:April 25, 2023

Before:Garry, P.J., Egan Jr., Lynch, Fisher and McShan, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant, and appellant pro se.
John M. Muehl, District Attorney, Cooperstown (Christopher J. Di Donna of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the County Court of Otsego County (John F. Lambert, J.), rendered September 30, 2019, upon a verdict convicting defendant of the crimes of attempted aggravated assault upon a police officer and assault in the second degree.
On the evening of August 28, 2018, defendant separately encountered two City of Oneonta police officers, Edmund Donley and Lucas Harvey, during which defendant allegedly drove his vehicle into the patrol vehicles of each officer. He was charged by indictment with attempted aggravated assault upon a police officer (two counts), assault in the second degree and attempted assault in the second degree. Following a jury trial, defendant was acquitted of one count of attempted aggravated assault upon a police officer based on the encounter with Donley, but was otherwise convicted as charged. The count of attempted assault in the second degree was later dismissed by County Court upon defendant's motion. Defendant was sentenced to a prison term of 10 years, followed by four years of postrelease supervision, upon the attempted aggravated assault conviction, and a concurrent prison term of two years, followed by two years of postrelease supervision, on the assault second conviction. Defendant appeals.
Defendant maintains that the verdict is against the weight of the evidence because the People failed to prove the intent and serious physical injury elements of the charges. We disagree. For the attempt crime, the People were required to prove that defendant "engaged in conduct that came dangerously near commission of the completed crime" (People v Denson, 26 NY3d 179, 189 [2015] [internal quotation marks and citation omitted]; see Penal Law § 110.00). The completed crime — aggravated assault upon a police officer — requires proof that a person "with intent to cause serious physical injury to a person whom he or [she] knows or reasonably should know to be a police officer or a peace officer engaged in the course of performing his [or her] official duties . . . causes such injury by means of a . . . dangerous instrument" (Penal Law § 120.11). As for assault in the second degree, the People were required to prove that defendant, "[w]ith intent to cause physical injury to another person, . . . caus[ed] such injury to such person
. . . by means of . . . a dangerous instrument" (Penal Law § 120.05 [2]). As relevant here, serious physical injury "means physical injury which creates a substantial risk of death" (Penal Law § 10.00 [10]), and physical injury "means impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). " 'Dangerous instrument' means any instrument, . . . including a 'vehicle[,]' . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or . . . serious physical injury" (Penal Law § 10.00 [13]).
At trial, the People presented evidence that Donley was parked in his marked police vehicle near defendant's [*2]residence waiting for defendant to return home.[FN1] Upon defendant's arrival, Donley turned on "[t]he light bar" atop his vehicle — activating "a bright[,] white light" — and pulled within 5 to 10 feet of defendant's vehicle. Donley exited his vehicle and walked to the front driver's side of defendant's vehicle, where he and defendant made eye contact. Donley testified that defendant "tense[d] up" and became "aggressive." Donley "turned and . . . ran [back] towards the driver's side of [his] vehicle" when defendant "started to accelerate towards" him, ultimately crashing into the side of Donley's vehicle as he stood behind it. Donley drew his weapon, directed defendant to turn off his vehicle and radioed to dispatch for backup. Instead of heeding Donley's directive, defendant drove north and Donley followed with his lights and sirens activated. When he caught up to defendant, Donley observed that defendant's vehicle had collided with a patrol vehicle driven by Harvey between "the wheel well and the . . . front driver's door." Donley observed defendant back up and hit Harvey's vehicle again in that same location, doing so "two or three times before further fleeing." Defendant was eventually apprehended and placed under arrest after a high speed chase on a highway.
Harvey generally confirmed this testimony, explaining that he responded to Donley's radio call for backup and, upon spotting defendant driving toward an intersection, activated the lights and sirens on his marked patrol vehicle. Harvey moved his vehicle to a 45-degree angle with the intent to have defendant pass him, after which he planned to make a U-turn to get behind defendant. Harvey testified that, as defendant approached the intersection traveling between 20 and 30 miles per hour, defendant veered right as if he was going to make a turn but "instantly cut[] back" and hit the driver's side door of Harvey's vehicle, causing Harvey to "slam into the driver's side door from the impact." Defendant then backed up and "rammed" into Harvey's vehicle again, this time causing the air bags to deploy. According to Harvey, defendant struck him an additional two or three times. Harvey did not immediately feel pain at the scene of the accident but did have pain afterwards, ultimately suffering superficial bruising to the bone of his left shoulder. He went to the hospital after the incident, where he refused narcotic pain medication but took ibuprofen for pain relief. Although he worked the remainder of his shift that day, he was out of work for six days thereafter. Harvey's vehicle was disabled in the incident.
The verdict on the charges of attempted aggravated assault against a police officer and assault in the second degree stem from defendant's conduct directed at Harvey. Defendant contends that, rather than intending to assault Harvey, "he was attempting to flee what he thought was a mugging" and was struck by Harvey's vehicle when Harvey ran a stop sign at the intersection where they collided[*3]. We conclude, however, that a different verdict would have been unreasonable in this case. Donley and Harvey were in marked patrol vehicles with their emergency lights activated, Harvey testified that defendant, who was traveling between 20 and 30 miles per hour, initially "veer[ed] to the right as if he [was] going to turn" and then "instantly cut[ ] back" and slammed into the driver's side door of his vehicle — indicating that the initial impact was deliberate, as was the repeated ramming of Harvey's vehicle. This testimony amply supports the jury's determination that defendant acted with the requisite intent sufficient for a conviction on both charges (see People v LaDuke, 204 AD3d 1083, 1086-1087 [3d Dept 2022], lv denied 28 NY3d 1072 [2022]; People v Dickinson, 182 AD3d 783, 787 [3d Dept 2020], lv denied 35 NY3d 1065 [2020]). Contrary to defendant's contention, the fact that Harvey suffered only a physical injury does not undermine the attempted aggravated assault conviction, as the People were not required to establish the completed crime (see Penal Law § 110.00; People v Denson, 26 NY3d at 189). The testimony that defendant deliberately slammed into the driver's side door of Harvey's vehicle at a relatively high rate of speed multiple times was sufficient to establish that he engaged in conduct which could have produced serious physical injury within the meaning of Penal Law § 10.00 (10) (see People v Tucker, 91 AD3d 1030, 1032 [3d Dept 2012], lv denied 19 NY3d 1002 [2012]; People v Carroll, 58 AD3d 448, 448 [1st Dept 2009], lv denied 12 NY3d 815 [2009]).
Defendant's remaining contentions do not warrant extended discussion. His argument that County Court erred in denying his pretrial request to examine the arrest warrant that Donley was attempting to serve on him prior to the police chase lacks merit. Regardless of whether the arrest warrant was valid, the testimony at the Dunaway hearing established independent probable cause to effectuate a warrantless arrest based upon defendant's criminal conduct during the course of the police encounter (see People v 
La Belle, 37 AD2d 135, 137 [3d Dept 1971]). Defendant's claim that the jury rendered an inconsistent verdict on the charges of assault in the second degree and attempted assault in the second degree is academic, as the attempted assault charge was dismissed by County Court. We are unpersuaded by defendant's argument that the sentence imposed is unduly harsh or severe (see CPL 470.15 [6] [b]) and have considered the remaining contentions set forth in his pro se supplemental brief, finding them to be without merit.
Garry, P.J., Egan Jr., Fisher and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: As borne out during a pretrial suppression hearing, Donley was waiting for defendant to return home to serve him with an arrest warrant. No evidence to this effect was presented at trial.