People v Hu Sin (2025 NY Slip Op 03100)

People v Hu Sin

2025 NY Slip Op 03100

Decided on May 22, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 22, 2025

No. 40 

[*1]The People & c., Respondent,
v
Hu Sin, Appellant.

Thomas J. Eoannou, for appellant.
Michael J. Hillery, for respondent. 

SINGAS, J.

At defendant's trial for raping his sister-in-law, the court permitted the prosecution to introduce evidence that defendant had previously sexually assaulted two of his other sisters-in-law. We now hold that the trial court did not err in admitting this evidence and affirm.
I.
Defendant was arrested shortly after the victim, his sister-in-law, reported to police that defendant had raped her while her young child watched. As the victim testified at trial, she lived in the upstairs apartment of a two-story house with her husband, two children, sister, and niece. Defendant lived in the downstairs apartment with his wife (the victim's sister), children, and aunt. On May 25, 2017, around 10:00 a.m., the victim and her young child were sleeping in her bedroom when defendant entered the room purporting to deliver a piece of mail. Defendant came to sit on the bed beside the victim and propositioned her for sex. The victim immediately declined, telling defendant that he was like a brother or father to her, and tried to exit the room.
Defendant became physically aggressive toward the victim, grabbing at her, pulling her hair, and hitting her head into the wall. The victim managed to run out of the room, with her child following, but defendant caught up with her, grabbed her again, and pushed her onto the floor. Defendant got on top of the victim, pulled her skirt up, and raped her. The victim testified that she screamed for defendant's aunt, who was in the apartment below, and tried to [*2]physically resist defendant without success. While defendant was raping the victim, he told her: "I am waiting for all your sister. I want to do like this. So I am waiting for this time." Defendant only stopped once the victim's child went to get help, upon the victim's instruction. Once defendant had exited the apartment, the victim fled to a nearby friend's house with her child and called her sister, A.A. Shortly thereafter, the victim's family members brought her back to her home and called the police, and defendant was arrested.
Defendant was charged with rape in the first degree under a forcible compulsion theory (see Penal Law § 130.35 [1]), sexual abuse in the first degree under a forcible compulsion theory (see id. § 130.65 [1]), and rape in the third degree under a lack of consent by reason other than incapacity theory (see id. § 130.25 [3]). Prior to trial, the People sought permission to introduce evidence that defendant attempted to forcibly rape B.B., the victim's sister, between 2011 and 2012, and attempted to forcibly rape A.A. in March 2017. The People asserted that, among other things, the evidence was admissible to demonstrate that defendant's "conscious objective was to rape" the victim. The trial court granted the People's Molineux application over defendant's objection, later instructing the jury that it could consider the evidence with respect to defendant's "guilty knowledge," that his actions "were not the product of accident or mistake," and "that his actions were part of a common scheme or plan." The court told the jurors that they could not consider the evidence "for the purpose of proving that the defendant had a propensity or predisposition to commit the crimes charged."
In accordance with the court's decision, A.A. and B.B. testified that defendant had previously assaulted them. They both described situations where defendant would get them alone, push them to the floor, pull up their skirts, and attempt to rape them. A.A. testified that, after his assault, defendant told her that he would "do another your sister too" and would "rape all [of her] family" if she told anyone what happened. Both A.A. and B.B. disclosed these assaults to the victim prior to May 25, 2017, as well as to other family members, and did not report the incidents to law enforcement.
At trial, defendant offered a defense of consent. Defense counsel suggested to the jury that defendant and the victim were having an affair, that the victim was using defendant to conceive a child, and that on the day in question, the victim and defendant had rough, consensual sex. Specifically, counsel stated that "we have hair being pulled perhaps for another reason. Perhaps a sexual preference" and at another point that "[p]eople pull hair when they have sex many times." Further, counsel intimated that the victim was claiming that defendant raped her because her child caught her in the act and she needed an explanation so that her husband would not divorce her.
Defendant was convicted on all counts. The Appellate Division affirmed, with one Justice dissenting (see 217 AD3d 1439 [4th Dept 2023]). The Court held that the Molineux evidence was admissible "for purposes of completing the narrative and providing relevant background information of the family dynamic" (id. at 1439 [internal quotation marks omitted]). Further, the Court deemed the evidence "relevant to establish defendant's use of force" because "[i]t was defendant's theory at trial to suggest that defendant and the victim were engaged in rough but consensual sexual acts" (id. at 1440). The dissenting Justice granted defendant leave to appeal.
II.
The enduring Molineux rule "states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Denson, 26 NY3d 179, 185 [2015] [internal quotation marks omitted]; see People v Molineux, 168 NY 264 [1901]). "When we limit Molineux or other propensity evidence, we do so for policy reasons, due to fear of the jury's human tendency to more readily believe in the guilt of an accused person when it is known or suspected that [they have] previously committed a similar crime" (People v Frumusa, 29 NY3d 364, 370 [2017] [internal citation omitted]). But if "the proffered Molineux evidence is relevant to some material fact in the case, other than the defendant's propensity to commit the crime charged, it is not to be excluded merely because it shows that the defendant has committed other crimes" (Denson, 26 NY3d at 185 [internal quotation marks omitted]).
The Molineux Court provided specific examples of non-propensity purposes for which evidence of a defendant's prior bad acts may be admitted: when the evidence "tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial" (People v Cass, 18 NY3d 553, 560 [2012]). Molineux evidence is not limited to these categories (id.; see People v Rojas, 97 NY2d 32, 37 [2001]), and this Court has upheld the admission of Molineux evidence in other circumstances, such as when it is "relevant to complete the narrative of the events charged [*3]in the indictment" or when it "provide[s] necessary background information" (People v Morris, 21 NY3d 588, 594 [2013]).
"In assessing whether evidence of a defendant's prior criminal acts should be admitted at trial, a trial court is required to engage in a two-step analysis" (Denson, 26 NY3d at 185). "First, the trial court must determine whether the People have 'identif[ied] some material issue, other than the defendant's criminal propensity, to which the evidence is directly relevant' " (id., quoting Cass, 18 NY3d at 560). This first step is purely a question of law, which this Court reviews de novo (see Cass, 18 NY3d at 560 n 3). If the People meet this burden, the court must move to step two which requires it to make a "discretionary determination" as to whether "the probative value of the evidence outweighs the potential for prejudice to the defendant" (People v Leonard, 29 NY3d 1, 7 [2017]). If the answer is yes, the court may admit the evidence and if the answer is no, the court may not. This step two determination "falls to the sound discretion of the trial court" and is thus reviewed for abuse (People v Valentin, 29 NY3d 150, 156 [2017]).
A.
This Court has consistently deemed Molineux evidence admissible where a defendant offers a theory of defense that assumes the underlying conduct but disputes that the defendant possessed the requisite guilty intent or state of mind in the commission of said conduct (see Valentin, 29 NY3d at 156; Cass, 18 NY3d at 561; People v Israel, 26 NY3d 236, 243 [2015]; People v Bradley, 20 NY3d 128 [2012]; People v Ingram, 71 NY2d 474 [1988]; People v Alvino, 71 NY2d 233 [1987]; People v Santarelli, 49 NY2d 241 [1980]; People v Calvano, 30 NY2d 199 [1972]; People v Schwartzman, 24 NY2d 241 [1969]; People v Katz, 209 NY 311, 329 [1913]; cf. People v Crandall, 67 NY2d 111, 118 [1986]; People v McKinney, 24 NY2d 180, 185 [1969]). This rule makes sense because the focus in that situation "is not on the actual doing of the act, for the act is either conceded or established by other evidence. Rather, the element in issue is the actor's state of mind, and evidence of other similar acts is admitted under this exception because no particular intent can be inferred from the nature of the act committed" (Matter of Brandon's Estate, 55 NY2d 206, 211 [1982]).
This Court's decision in Alvino is illustrative. There, the defendant, an employee of the New York State Department of Motor Vehicles, was accused of issuing a false driver's license in exchange for money. The defendant admitted that he had, in fact, issued a false driver's license but claimed that he was busy with other work at the time and had not checked the details of the request for the license. This Court held that "[i]n light of this defense, the evidence of prior uncharged crimes"—that defendant had engaged in 15 prior transactions of a similar nature—"was unquestionably admissible to establish defendant's intent and the absence of mistake" (Alvino, 71 NY2d at 244). Similarly, in People v Hernandez, decided alongside Alvino, the defendant was accused of possessing cocaine with intent to sell. This Court acknowledged "the strong likelihood that the jury would infer from the evidence, and particularly [the defendant's] possession of 21 glassines, that he was a seller of cocaine" (id. at 245-246). However, the defendant admitted to the crime of possession, but claimed that he possessed the cocaine for his own personal use and thus, lacked the requisite criminal intent. As such, this Court held that evidence that the defendant had sold drugs on three prior occasions was properly admitted to prove the defendant's intent to sell (id. at 247).
We now apply those well-established Molineux principles here. In this case, "guilt cannot be predicated upon the mere commission of the act charged as a crime" (see Katz, 209 NY at 328) because defendant's consent theory assumes that sexual intercourse occurred, and sexual intercourse between two adults is not an inherently criminal act. Rather, under the charged statutes, the act is only elevated to the realm of criminality when accompanied by a guilty mens rea. Specifically, with respect to third-degree rape, the People were required to prove that defendant intended to have sexual intercourse with the victim without her consent—i.e., defendant knew or had reason to know that the victim had not consented but intended to have sex with her regardless (see Penal Law § 130.25 [3]). With respect to first-degree rape and first-degree sexual abuse, the People were required to prove the aforementioned intent and further, that defendant had "the intent to forcibly compel [the victim] to engage" in the sexual act (see People v Williams, 81 NY2d 303, 316-317 [1993]; see Penal Law §§ 130.35 [1]; 130.65 [1]).
Even if one could conclude that a defendant's criminal intent is readily inferable from the specific circumstances of the sexual encounter, a consent defense in an acquaintance context creates ambiguity not around whether the act occurred but around the defendant's state of mind in engaging in the act (cf. Valentin, 29 NY3d at 156 [stating that a defendant's intent to sell drugs is "usually readily inferable from the sale itself" but where the defendant disputes that they had the intent to sell, Molineux evidence may be admitted to establish that intent]; People v Vargas, 88 NY2d 856, 858 [1996] [Molineux evidence of prior sexual assault not admissible in stranger rape case where the complainant and defendant presented "two starkly contrasting scenarios . . .with only credibility in issue"]). [*4]In other words, a defendant presenting such a defense has provided a narrative that might still be "strongly indicative of guilt" but is "not incompatible with innocence," such that "the real issue" becomes whether the defendant is "a guiltless scapegoat or a guilty conspirator" (see Katz, 209 NY at 329). In that case, under our traditional Molineux principles, "evidence of [the defendant's] complicity in similar offenses under such circumstances as to support the inference that the act charged was not innocently or inadvertently committed" is relevant under step one Molineux (id. at 328). The court may then allow admission of such evidence if it determines, under step two, that the probative value of such evidence is not outweighed by the potential prejudice to the defendant.
That is precisely the situation here. Defendant presented a theory at trial that the sexual act was consensual. Thus, the primary question for the jury was not whether sexual intercourse occurred but whether defendant possessed the requisite intent: did he intend to have sexual intercourse with the victim without her consent and did he intend to use forcible compulsion to do so. That defendant had previously sexually assaulted the victim's sisters—defendant's other sisters-in-law—under hauntingly similar circumstances "has obvious relevance as tending to refute defendant's claim of an innocent state of mind" (Ingram, 71 NY2d at 480). It tends to make "the innocent explanation improbable" (id. at 479).
Additionally, the unique facts of this case render the Molineux evidence relevant as background information pertaining to the nature of defendant's relationship with the victim and the dynamics of the family at large (see Leonard, 29 NY3d at 7). During the charged rape, defendant stated: "I am waiting for all your sister. I want to do like this. So I am waiting for this time." Isolated, this statement may leave the jury puzzled. The Molineux evidence fills that gap and provides clarity and context for the jury. Further, defendant threatened to rape one of A.A.'s sisters if she told anyone what defendant did, and A.A. did disclose defendant's assault on her to multiple members of the family, making evidence of that assault particularly illuminating (cf. People v Till, 87 NY2d 835, 837 [1995]). Lastly, defense counsel suggested during opening argument that this family may have been engaging in "inner family marriages," thus rendering defendant's relationships with the other women in the family pertinent.
Chief Judge Wilson would admit this prior bad act evidence to clarify whether defendant had previously raped all the sisters or "just" the older one, or whether any prior rape was completed or "just attempted," and suggests that such clarification is necessary, in part, to cure a translation problem (see Wilson, Ch. J., concurring op at 3-4). We reject the notion that admission of this inherently prejudicial evidence should be determined based on the victim's or defendant's ability to speak English. Nor do we fault defense counsel for eliciting the nurse's testimony regarding the prior bad acts to blunt the court's pretrial ruling deeming the evidence admissible (see Wilson, Ch. J., concurring op at 3 n 2). As for Judge Rivera's determination that this Molineux evidence was properly admitted under the common scheme or plan exception (see Rivera, J., concurring op at 2), that exception has never been applied in these circumstances and we decline to review the exception's appropriateness here.
Accordingly, the trial court did not err in deeming the Molineux evidence relevant to a non-propensity purpose.
B.
Given the similarity of the prior acts, and the fact that the court repeatedly instructed the jury that the evidence could not be considered for propensity purposes, we further hold that the trial court did not abuse its discretion in determining that the potential prejudice of the evidence did not outweigh the probative value of such evidence in aiding the jury's deliberations.
Although the parties did not brief this Court's recent decision in People v Weinstein (42 NY3d 439 [2024]), we note that it does not mandate a different result. Weinstein is distinct, and plainly inapposite here. For example, in that case, there were "significant differences between [the] complainants and the Molineux witnesses," including that the Molineux witnesses only interacted with the defendant "for brief periods" but the "complainants had long-term relationships with [the] defendant," which rendered the Molineux evidence too dissimilar to the charged assaults to shed light on the defendant's intent with respect to the complainants (id. at 463-464; see People v Ventimiglia, 52 NY2d 350, 359-360 [1981]). Moreover, unlike the case here, Weinstein was "not a single-victim prosecution" but rather involved three complainants such that each charged incident acted as quasi-Molineux with respect to the other charged incidents (id. at 463).
Here, as we have explained, the Molineux evidence in this case was properly admitted under our traditional Molineux jurisprudence. Accordingly, the order of the Appellate Division should be affirmed.

WILSON, Chief Judge (concurring):

The question here is much simpler than one would guess from the majority's writing. At trial, the victim testified that while Mr. Sin was sexually assaulting her, Mr. Sin said that he sexually assaulted her older sister, wanted to sexually assault all her sisters, and had waited to sexually assault her. Mr. Sin admits that testimony was properly admitted, not through any Molineux exception, but as an admission, which the jury was entitled to consider without limitation. However, the victim's testimony, rendered through a Burmese translator whose accuracy throughout the trial was questioned,[FN1] was unclear as to whether the prior assaults were actual or attempted. On these unusual facts, the victim's sisters' testimony was relevant to clarify the meaning of the victim's testimony. Therefore, although I concur in the judgment, I would resolve this case on a far simpler ground: the sisters' testimony was needed to resolve the ambiguities in the victim's testimony, and was "'inextricably interwoven'" with that testimony (People v Ventimiglia, 52 NY2d 350, 361 [1981], citing People v Vails, 43 NY2d 364, 368 [1977]).
I.
"[E]vidence of prior crimes may be admissible 'if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule'" (People v Telfair, 41 NY3d 107, 114 [2023], quoting People v Alvino, 71 NY2d 233, 241-242 [1987]). In addition to the five exceptions articulated in People v Molineux (168 NY 264, 293 [1901]), we have held evidence admissible where it is found to be "'needed as background material'" (People v Till, 87 NY2d 835 [1995], citing People v Montanez, 41 NY2d 53, 58 [1976]) and "'inextricably interwoven'" with other properly admitted evidence in the case (Ventimiglia, 52 NY2d at 361, citing Vails, 43 NY2d at 368). "To be inextricably interwoven in the Vails sense the evidence must be explanatory of the acts done or words used in the otherwise admissible part of the evidence" (id.). Evidence is not admissible as background where "there was no ambiguity that could not have been easily dealt with by far less prejudicial means" (People v Resek, 3 NY3d 385, 390 [2004]).
The victim testified, without objection, that while the Mr. Sin was raping her, he said, "I am waiting for all your sister. I want to do like this. So I am waiting for this time." When she was asked to clarify what the defendant had said about her sisters, she responded, "So he tried to my older sister too he did that way." Those statements could be interpreted to mean that Mr. Sin had raped all her sisters, or just her older sister, or raped her older sister and [*5]attempted to rape her other sisters, or just attempted to rape one or more of her sisters. Because those statements were garbled and unclear, the sisters' testimony was crucial in clarifying their meaning.[FN2]
After the victim testified about the uncharged assaults, the victim's sisters provided Molineux testimony about prior incidents in which Mr. Sin had sexually assaulted and attempted to rape them [FN3]. That testimony resolved the ambiguities in the nurse's and the victim's testimony. For example, the sisters' testimony clarified that neither of the prior incidents was a rape; both were attempted rapes in which Mr. Sin eventually gave up.
Therefore, under these highly unusual circumstances, where some evidence of defendant's bad acts was properly admitted without limitation, not through a Molineux exception, but in testimony that was susceptible of varying interpretations, admission of the sisters' testimony to resolve the ambiguities was properly admitted as "inextricably interwoven" with the properly admitted testimony (see e.g. Vails, 43 NY2d at 364 [in defendant's prosecution for selling drugs, officer's testimony referencing the defendant's prior sale was "inextricably interwoven with" and "intrinsic to" the sale charged in the indictment]). Accordingly, I concur in the result.
RIVERA, J. (concurring in the result):
I concur only in the result. The trial evidence established that defendant was a family predator, attacking each of his sisters-in-law and relying on linguistic isolation and family pressure to keep the victims silent. Under the circumstances of this case, the challenged Molineux testimony "was properly admissible in evidence 'for the purpose of completing the narrative and providing relevant background information [concerning] the family dynamic' " as it related to defendant's predatory behavior (217 AD3d 1439, 1439 [4th Dept 2023], quoting People v Elmore, 175 AD3d 1003, 1004 [4th Dept 2019]). Moreover, as the trial court concluded, the testimony also fell within the Molineux exception for a common scheme or plan, as applied to the particular facts of this sexual assault case (see People v Molineux, 168 NY 264, 293 [1901]). Indeed, "the testimony of the victim's two sisters was probative insofar as it helped explain the victim's conduct in the aftermath of the rape as well as why defendant would make such an overt and brazen sexual advance on the victim while her son was present" (217 AD3d at 1439).
Order affirmed. Opinion by Judge Singas. Judges Garcia, Cannataro and Troutman concur.
Chief Judge Wilson concurs in result in an opinion, in which Judge Halligan concurs. Judge Rivera concurs in result in a separate opinion.
Decided May 22, 2025

Footnotes

Footnote 1: After the victim completed her testimony, a juror (who herself was a translator, but not of Burmese), notified the Court that she believed that the Burmese translator was not translating the victim's statements properly, based on her observation of the interactions between the victim and the translator, in which there appeared to be conversations between the two that were not being translated. The court conducted an inquiry and admonished the translator to translate literally. After several other witnesses had testified, counsel conducted an on-the-record examination of the translator to establish that she had been repeatedly translating "penis" as "peanut." Many of her other translated answers were not proper English. Even in the colloquy with the court about the quality of her translation, when she was not translating anything, her sole substantive response that was more than a couple of words was: "Sometime when I pronounce S, not right way. Sometime even my name William, I have to say Williams, but I forget to say S." On appeal, Mr. Sin has not raised any challenge to the interpreter's ability. 

Footnote 2: On cross-examination of the emergency room nurse, defense counsel elicited testimony that the victim's sister who accompanied the victim to the hospital told the nurse "that this had occurred with her other sisters also." That testimony, like the victim's testimony, is unclear about what "this" was, and does not help to clear up the ambiguity in the victim's testimony. (Of course, Mr. Sin does not object to the nurse's testimony, because his counsel elicited it.) 

Footnote 3: Although the court had initially ruled pretrial that the Molineux evidence was admissible only to show a "common plan or scheme" (see Molineux, 168 NY at 305), the court's limiting instruction, to which defense counsel did not object, listed several additional purposes. The court reiterated those additional purposes in the jury charge, also without objection by defense counsel.