Keating, J.
Appellants have been convicted of the crimes of felonious possession of narcotics and of bribery. They attack the sufficiency of the evidence establishing their guilt and also contend their guilt was not proved beyond a reasonable doubt. These claims are without merit. Also, we find no error in the court’s charge or in its rulings warranting a reversal. It is' necessary to discuss only three points — the denial of appellants’ motion to sever for purposes of trial the narcotics and the bribery charges, the legality of the search warrant, and the denial of an evidentiary hearing on the possible use of illegal wiretaps.
Prior to trial, appellants moved for separate trials on the bribery charge (count 4) and narcotics charge (counts 1, 2 and 3). In denying the motion, the trial court relied on that provision of section 279 of the Code of Criminal Procedure which permits consolidation in one indictment of separate crimes arising from “two or more acts or transactions con *449 nected together or constituting parts of a common scheme or plan ”.
In their brief here, the People rely on these same two provisions. It is very difficult, however, to see how these acts were part of a common scheme or plan. Certainly the plot to bribe the police officers was not part of their scheme or plan to traffic in narcotics. The only basis for holding that they were properly joined was that they were intimately connected. The connection is that the bribery arose out of the police discovery of appellants’ narcotics operations. The connection is demonstrated by the fact that much of the evidence concerning the appellants’ trafficking in narcotics would be admissible on the trial of the bribery charge to prove motive and intent, and, conversely, the evidence concerning the bribery was admissible as corroboration of the narcotics charge. Therefore, as a practical matter, there would be little point in separating the issues. Moreover, the joinder here was in accord with established precedent (see People v. Lombardi, 20 N Y 2d 266).
The search warrant involved here had been issued approximately an hour before the seizure and it directed an immediate search of Apartment 4-G- at 2020 Arthur Avenue, The Bronx, as well as of the persons of the defendant Hunger and of one Gloria Jackson, the occupant of the apartment. The search took place on the evening of August 31, 1966 at about 11:30 p.m. While no one was present in the apartment when the police officers entered, the officers observed a large narcotics processing and packing mill with approximately $600,000 worth of heroin and over 15 pounds of mixture containing a high concentration of heroin.
Appellants contend that the affidavits submitted to the court in support of the search warrant provide an insufficient basis for the issuance of the warrant. We examine the sufficiency, of the affidavits in light of the most recent decision of the Supreme Court as to what an affidavit must contain to constitute probable cause (Spinelli v. United States, 393 U. S. 410).
In Spinelli, .the affidavit in essence stated that the FBI had kept track of the defendant’s movements for five days, and that on four of these days he had been seen to park his car at some time between 3:30 and 4:45 p.m. in a parking lot of an apartment house, and on one particular day he was seen to *450 enter a particular apartment. The FBI checked with the telephone company and established that the apartment had two telephones. The affidavit also stated that Spinelli was known to the FBI agent and to Federal law enforcement agents to be a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers. These facts alone, the court said, signified nothing in the way of probable cause (Nathanson v. United States, 290 U. S. 41, 46). The key element in the Government’s case was a statement in the affidavit that the FBI had been informed by a confidential reliable informant that Spinelli was operating a handbook and accepting wagers and disseminating wagering information by means of the two telephones in the apartment.
The court held the affidavit insufficient to establish probable cause. As the tip was a necessary element for a finding of probable cause, Justice Hablan, writing for the court, first analyzed the tip to see if the two-fold test of Aguillar v. Texas (378 U. S. 108) for issuing a warrant on the basis of hearsay evidence alone had been met. The affidavit failed on both counts. Although it stated that the informant was reliable, no information to support the conclusion was given. Nor was there a sufficient statement of the ‘ ‘ underlying circumstances ” from which the informant concluded that Spinelli was running a bookmaking operation in that apartment. The affidavit said nothing about how the informant had obtained his information, and no details of the information that he gave were mentioned in the affidavit. Therefore, the Magistrate had no way of knowing whether the informant was- “ relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual’s general reputation ” (393 U. S., supra, p. 416).
Finding the tip itself- deficient as a basis for a finding of probable cause, the opinion then examines the independent investigation of the FBI officers. This, too, was found to be inadequate. The observations only confirmed that Spinelli was going to the apartment. Not only were the observations themselves inadequate to constitute probable cause, they gave little added weight to the tip. The court contrasted the observations with those made in Draper v. United States (358 U. S. 307) wherein informant, although he did not state the source *451 of his information, gave a very detailed account, and every detail was subsequently confirmed by independent observation.
Although the tip was thus not materially strengthened by the observations of the authorities, it was still entitled to some weight. Therefore, Justice Harlan looked to other portions of the affidavit to see if they would provide the needed support. They did not. There is nothing unusual about having two phones in an apartment and there was no abnormal activity observed when Spinelli went to the apartment. An unusual number of telephones might have been of significance as would the appearance of a number of convicted gamblers at the premises. Finally, the fact that Spinelli was “known as a gambler ” was of no help. The undescribed suspicions about a person’s reputation “ may [not] be used to give additional weight to allegations that would otherwise be insufficient ’ ’ (393 U. S., supra, pp. 418-419). It followed, therefore, that the Magistrate was not authorized to issue a search warrant on that affidavit.
Applying Justice Harlan’s mode of analysis to the affidavit here, there can be no question that 4 4 probable cause ’ ’ existed in this case. That the informant’s reliability was shown is clear. Not only had his leads resulted in a conviction in one case, but his aid had led to two other arrests in pending cases. In addition, there was the discovery of the narcotics plant-two weeks earlier. Therefore, at least the first of the two tests in Aguillar -had been fully satisfied.
Since the affidavit only states that the informant confirmed the existence of the plant, it might be argued that the lack of any detail makes this tip of no more significance than the tip in Spinelli or in People v. Corrado (22 N Y 2d 308). This might be the case, were it not for the fact that this same informant gave information leading to the discovery of defendant Hunger’s prior place of operation. To paraphrase Justice Harlan, a Magistrate, when confronted with such a circumstance, could reasonably infer that the informant had gained his information in a reliable way and not from an offhand remark heard at a neighborhood bar. On the basis of the earlier search, it was clear that the informant was obtaining information about defendant Hunger’s operations from either his personal observations or from some highly reliable secondary source.
*452 It would appear, therefore, that a strong argument can be made that the tip in this case fully complies with the tests of Aguillar. Assuming, however, that the informant’s tip.would not itself have furnished a basis for a finding of probable cause, because of its lack of detail, we have the independent observations of the police officer.
The officer knew that one of the apartments was occupied by a girl he knew to be a “ plant girl ”. Within two hours after placing a watch on the apartment house, .defendant Hunger, who had been -seen at the building where the first plant had been found, was seen entering the 2020 Arthur Avenue address. Three plant girls were also observed entering the building. Whatever doubts there might be about the reliability of the informant’s information was surely now removed.
The entry of defendant Hunger and the three plant girls into the building within such a short period was certainly the “ abnormal activity” which Justice Harlan referred to in Spinelli. This activity was highly suspicious and reinforced the probative value of the tip. Together, these circumstances constituted probable cause within the meaning of the Supreme Court’s decisions which are cited with approval in Spinelli (Draper v. United States, supra; United States v. Ventresca, 380 U. S. 102; McCray v. Illinois, 386 U. S. 300; see, also, People v. Valentine, 17 N Y 2d 128).
• Although probable cause was established, appellants were entitled to have a hearing on the question of perjury by the police officer. This the trial court ordered. During the course of the hearing, it came out that, for a period of four months, the police had been tapping the wires of the defendant Harrison’s telephone. In cross-examining the police officer who made the affidavit, defense counsel then sought to establish that, in fact, there had been no informant and that the information leading the police to suspect the existence of the narcotics plant had been obtained by an illegal wiretap. The trial court cut off all questioning on this point without explanation when the prosecution objected that it was irrelevant on the issue of perjury. This clearly was error, as the perjury could be established indirectly by showing that the information- which the police officer alleged he had obtained from an informant was in fact gained through a different source — an illegal wiretap.
*453 Perhaps this error could be ignored as not prejudicial, except that, upon learning of the wiretap, appellants were then denied a request for a full evidential hearing concerning the wiretaps. What the wiretaps were is not disclosed by the record although their occurrence is conceded. The basis for the objection to a hearing on the wiretapping issue was the claim of the prosecution that it had not introduced any evidence obtained from the taps.
There is little to be said except that the ruling was erroneous, and the appellants were entitled to a hearing (People v. Morhouse, 21 N Y 2d 66; People v. McCall, 17 N Y 2d 152). The representation of the District Attorney that no evidence or leads were obtained from the wiretaps cannot deprive the defendants, if they have standing, of an opportunity to test the legality of the wiretaps and whether the taps, if illegal, had led to information which was improperly used at this trial.
The District Attorney suggests that we now ex parte determine whether the orders were improperly obtained, and, if they were, examine the recordings to determine whether any evidence at the trial could possibly have been obtained from these taps. Even were this court prepared to undertake such a huge task as reviewing the legality of wiretapping orders ex parte — and we have already indicated in the Morhouse case that we would not (21 N Y 2d, supra, p. 78)—such a procedure could not survive constitutional attack. In fact, the Supreme Court’s recent decision in Alderman v. United States (394 U. S. 165) puts an end to any doubts on this score. (See, also, Kolod v. United States, 390 U. S. 136.)
It is not necessary, however, that appellants’ convictions be overturned. It is sufficient to follow the procedure used in the Morhouse case and remand for a hearing on that issue and otherwise affirm the judgments of conviction. While it would appear that the bribery conviction is, by the very nature of the crime, based upon independent evidence, we cannot be certain of this on the present state of the record. The motivation for the bribery was appellants’ criminal involvement with narcotics. If it should be determined that a portion of the evidence with respect to the narcotics activities is tainted, then it will have to be determined what effect this would have on the bribery charge.
*454 At the hearing the District Attorney must disclose to each defendant all wiretapping of conversations to which he was a party, or to which he might have standing to object (see Aider-man v. United States, supra). It may very well be that some of the defendants have no standing to object to some of the wiretapping which occurred here, but that will have to be determined at the hearing. If the order is determined to be illegal, there will then have to be a determination whether the convictions are based upon tainted evidence, and, if so, whether a new trial must be ordered.
Accordingly, the judgments of conviction should be modified and the matter remitted to the Supreme Court, Bronx County, for a suppression hearing and, as so modified, affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Judgments modified in accordance with the opinion herein and, as so modified, affirmed.