People v Davis (2024 NY Slip Op 00746)

People v Davis

2024 NY Slip Op 00746

Decided on February 13, 2024

Appellate Division, First Department

RODRIGUEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 13, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
David Friedman Lizbeth González Julio Rodriguez III Bahaati E. Pitt-Burke

Ind. No. 1335/11, 3389/16 Appeal No. 639 Case No. 2018-03036 

[*1]The People of the State of New York, Respondent,
v
Tommy Davis, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Robert M. Mandelbaum, J.), rendered January 3, 2018, convicting him, after a jury trial, of attempted murder in the second degree, attempted assault in the first degree, and three counts of criminal possession of a weapon in the second degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 25 years to life.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Margaret E. Knight of counsel), and Cravath, Swaine & Moore LLP, New York (Scott B. Cohen of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Faith DiTrolio and Steven C. Wu of counsel), for respondent.

RODRIGUEZ, J. 

Defendant appeals from a judgment of the Supreme Court, New York County (Robert M. Mandelbaum, J.), rendered January 3, 2018, convicting him, after a jury trial, of attempted murder in the second degree, attempted assault in the first degree, and three counts of criminal possession of a weapon in the second degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 25 years to life.
Caprice R. Jenerson, Office of the Appellate Defender, New York (Margaret E. Knight of counsel), and Cravath, Swaine & Moore LLP, New York (Scott B. Cohen of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Faith DiTrolio and Steven C. Wu of counsel), for respondent.
RODRIGUEZ, J.
At issue in the present appeal is whether Supreme Court's consolidated trial of two indictments relating to separate criminal transactions, without appropriate limiting instructions, was reversible error.
The first indictment charged defendant with, among other counts, attempted murder. In relation to the first indictment, no gun was recovered, the alleged victim was not injured, and the evidence showed that there was at least some degree of animus between defendant and the alleged victim. The defense theory was thus that the discharged gun was in fact the victim's. The second indictment, concerning an incident nearly six months later at a different location, charged defendant with possession of a firearm that was recovered on the person of his companion. The principal evidence supporting the second indictment was a set of suggestive jail phone call recordings.
Consolidated trial of indictments like the two at issue here is not necessarilyerror. However, defendant suffered impermissible prejudice as a result of (1) the nature and quantum of the evidence presented and (2) the specific respective theories of the prosecution and the defense. Supreme Court thus abused its discretion and committed error in trying the indictments together.
Although prejudice may in general be adequately ameliorated by appropriate limiting instructions, the jury received no such instruction here.
Accordingly, given the compounded prejudicial effect resulting from the errors of consolidated trial and failure to provide appropriate limiting instructions, the convictions must be vacated and the matter remanded for a new trial of each indictment.
I.
By indictment number 1335/11, defendant was charged with attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), attempted assault in the first degree (Penal Law §§ 110.00, 120.10 [1]), and two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b], [3] [possession of loaded firearm outside the home and with intent to use unlawfully against another]). The indictment concerned an October 7, 2010 confrontation between defendant and Juan Camarena, a handyman accompanying superintendent Jose Cruz, while Camarena was working at the building where defendant [*2]had been recently fired as superintendent (the 2010 offense). It was undisputed that a gun discharged. A bullet hit Camarena's cell phone, but he was not injured.
By indictment number 2447/12, defendant was charged with two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b], [3]). This second indictment concerned defendant's alleged March 22, 2011 possession of a gun that was recovered on the person of his companion George McLloyd in the course of defendant's, and then McLloyd's, arrest (the 2011 offense). Before defendant's indictment on the 2011 offense, McLloyd was indicted for possession of the gun. McLloyd's indictment was dismissed after the gun was suppressed as the product of an illegal search. After a mistrial, count two of this indictment was superseded by indictment number 3389/16, which also charged defendant with criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]).
The indictments were consolidated by decision and order of Supreme Court (Richard D. Carruthers, J.) dated September 4, 2012,[FN1] which provided, in relevant part:
"Although both indictments charge the defendant with weapons possession under the theories that he intended to use the weapon unlawfully against another and that possession was outside his home or place of business, each indictment concerns a different weapon, and the alleged offenses took place, respectively, on October 7, 2010 and March 22, 2011. The defendant has filed an affirmation in opposition to consolidation.
"The Court will grant consolidation of the two indictments, which is permissible if the offenses are 'the same or similar in law.' CPL § 200.20 (2) (c). Both indictments charge the defendant with criminal possession of a weapon in the second degree under the same theories. Furthermore, the evidence of possession of a firearm on October 7, 2010 would be relevant and admissible to prove the defendant's possession of a weapon on March 22, 2011 under the theory that he intended to use the weapon unlawfully against another. People v Herrera, 191 AD2d 585 (2nd Dept 1993); People v Richardson, 148 AD2d 476 (2d Dept 1989); see People v Chuang, 96 AD3d 590 (1st Dept 2012)."
Supreme Court's latter basis for consolidation is authorized by CPL 200.20 (2) (b) ("Two offenses are 'joinable' when: . . . such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second" or vice versa).
Defense counsel raised the issue again before the first trial
[FN2] in an appearance on April 18, 2013, arguing that trying the indictments together would result in undue prejudice given the risk of propensity inference by the jury and, further, that no limiting instruction would sufficiently resolve the ensuing prejudice. The prosecutor argued that the 2010 offense would be material and admissible as to defendant's intent with respect to the [*3]2011 offense. The prosecutor further noted that appropriate limiting instructions would address the issue and result in separated consideration of the evidence. Supreme Court adhered to its decision, commenting that jurors are and would be capable of making the difficult decisions required.
Defendant's objection to the consolidation was also raised orally on November 1, 2017, immediately prior to defendant's retrial. Supreme Court observed that the consolidated trial was law of the case, and defense counsel noted a continued objection.
In the retrial, the jury heard testimony from nine witnesses regarding the 2010 offense: (1) Ilyas Washington, a resident and member of the co-op board of the building in which the offense occurred; (2) William Crumlic, a resident of the same building who heard the gunshot; (3) Officer Feaggins, a responding officer; (4) Jose Cruz, the newly hired superintendent; (5) Officer Vargas, another responding officer; (6) Rawlins Phillip, who installed cameras at the building and observed a prior interaction between defendant and Cruz; (7) Bruce Fonseca, an EMT who responded to treat the alleged victim; (8) Juan Camarena, Cruz's handyman and the alleged victim in the 2010 offense; and (9) Officer Martinez, who testified regarding gunshot residue.
Regarding the 2011 offense, the jury heard testimony from two witnesses:
(1) Detective Kuhnapfel, a member of the regional fugitive task force who, with other members of his team, arrested defendant and George McLloyd on March 22, 2011; and (2) Detective Semler, a firearms analyst who testified that the revolver recovered in the 2011 offense was operable.
As for testimony relating to both offenses, the jury heard from (1) NYPD tape technician Fingall, who provided testimony regarding Sprint report records, Cruz's 911 calls, and defendant's jail calls and (2) Detective Bahm, a firearms analyst who testified, among other things, that the fired bullet recovered at the scene of the 2010 offense was notfired from the revolver recovered on George McLloyd's person in 2011.
In addition to witness testimony, portions of six jail calls were played for the jury (calls 1 through 6). calls 1, 3, and 6 concern the 2010 offense only,[FN3] and calls 4 and 5 discuss only the 2011 offense. Additionally, although call 2 contains information relating to both incidents, the discussions are separated in substance and in time.
Defendant's theory was that the fired gun involved in the 2010 incident was not defendant's gun but rather was Camarena's gun. The defense summation—relying on
(1) Cruz's testimony that he had told Camarena about defendant's days-earlier threatening interaction with Cruz, (2) video showing antagonism between Camarena and defendant during an interaction before the shooting, (3) Camarena's testimony that he started an argument with defendant and was ready to fight, and (4) the fact that no gun was recovered from the scene of the 2010 offense—argued that Camarena accidentally shot [*4]a gun he had brought to the building for protection, and that the gun was then hidden by Camarena or Cruz on the roof and never recovered. As to the 2011 offense, the defense argued that the prosecutor failed to carry their burden in that neither the testimony of the arresting officers nor the substance of the jail phone calls showed that defendant possessed the gun recovered from McLloyd.
The prosecution argued in summation that Cruz and Camarena's testimony established that defendant shot Camarena with a silver gun and then fled the scene. Responding to defendant's theory, the prosecution argued that Cruz and Camarena "are just regular people," a "[s]uper of 25 years and his handyman, a 62-year-old married father of five who's had the same job as a super for 5 years." "[T]hese are not the sort of people who are out packing guns on the regular." Defendant, on the other hand, was, at the time of the 2011 offense, "a fugitive from the law[,] and he's walking around, has a gun, a loaded gun." The prosecutor further stated, "[y]ou may consider the evidence of how defendant has used guns."
The record reflects, and the parties acknowledge in their briefs on appeal, that the court did not instruct the jury appropriately regarding separate consideration of the evidence admitted on each offense.
II.
A.
As noted above, the indictments were consolidated pursuant to CPL 200.20 (2) (b) and (c) by decision and order dated September 4, 2012, which decision was left undisturbed both in advance of the initial trial and when the issue was orally raised again before retrial. The issue is therefore whether consolidation was proper under either CPL 200.20 (2) (b) or (c), independently (see CPL 200.20 [2] [disjunctive "or" between subsections (a), (b), (c), and (d)]).
1.
Under CPL 200.20 (2) (b), two offenses, "even though based on separate and distinct criminal transactions, may be joined in the discretion of the trial court if they are of such a nature that proof of either offense would be material and admissible as evidence-in-chief upon the trial of the other" (People v Bongarzone, 69 NY2d 892, 895 [1987]; see CPL 200.20 [2] [b]). "[E]vidence may be deemed material and admissible within the meaning of CPL 200.20 (2) (b) if such proof would be admissible under any of the recognized Molineux exceptions" (People v Bryant, 200 AD3d 1483, 1488 [3d Dept 2021]; see People v Conyers, 210 AD3d 540, 541 [1st Dept 2022]; People v Raucci, 109 AD3d 109, 117 [3d Dept 2013]; People v Daniels, 216 AD2d 639, 639-640 [3d Dept 1995]; see also People v Carlson, 180 AD2d 743, 744 [2d Dept 1992]; Hon. Robert G. Bogle, 1 Criminal Procedure in New York § 17:2 [2d, Oct. 2023 update] [Joinder of Offenses] ["Joinder under the criminal procedure law is based upon the Molineux rule. Where the evidence of one crime is sufficiently probative on an issue in the second to outweigh the prejudice involved, then both crimes can be tried together"]).
Under Molineux, otherwise inadmissible evidence [*5]of uncharged crimes and bad acts may be admitted when it is relevant to some material fact, such as (1) motive,
(2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, or
(5) identity (People v Cass, 18 NY3d 553, 559-560 [2012]; see People v Gines, 36 NY2d 932, 932-933 [1975] [complete the narrative]; People v Stanard, 32 NY2d 143, 146 [1973] [background evidence]). "To determine whether Molineux evidence may be admitted in a particular case, the trial court must engage in the following two-part inquiry: first, the proponent of the evidence must identify some material issue, other than the defendant's criminal propensity, to which the evidence is directly relevant; once the requisite showing is made, the trial court must weigh the evidence's probative value against its potential for undue prejudice to the defendant" (Cass, 18 NY3d at 560 [internal citations omitted]).
When analyzing the likelihood and gravity of prejudice presented by consolidated trial of separate indictments, the issue is whether the impact of proof from one indictment creates undue prejudice—based on risk of impermissible inference from the cumulative nature of the evidence, reasoning by propensity, etc.—in the jury's evaluation of the second indictment, and vice versa (see e.g. People v Shapiro, 50 NY2d 747, 756 [potential prejudice must be evaluated in both directions]; People v Gadsden, 139 AD2d 925, 926 [4th Dept 1988] ["There is an obvious danger that the jury considered the proof of defendant's possession of the shotgun to establish his propensity to commit armed robbery. The fact that the jury acquitted defendant of the weapon count does not eliminate the possibility that he was convicted of the robbery charges on the cumulative impact of the proof of both incidents"]).[FN4] When indictments are tried together, the risk of the jury using the evidence for an impermissible purpose thus flows both ways (see id.).
In consolidating the indictments under CPL 200.20 (2) (b), Supreme Court relied on three cases: People v Herrera (191 AD2d 585 [2d Dept 1993]), People v Richardson (148 AD2d 476 [2d Dept 1989]), and People v Chuang (96 AD3d 590 [1st Dept 2012]). On appeal, the prosecution argues that the indictments were properly tried together under this provision because evidence of defendant's unlawful use of a firearm in the 2010 offense is material and admissible regarding his intent for the 2011 offense. To be clear, and as emphasized at oral argument, the 2010 offense was the only evidence offered as to defendant's "intent to use the [gun] unlawfully against another" (CPL 265.03 [1]) in 2011. Alternatively, the prosecution argues that the incidents are connected because defendant possessed a gun during the 2011 offense in fear of retaliation for the 2010 shooting. Neither the cases relied upon by Supreme Court nor the prosecution's arguments on appeal are availing in this respect.
All three cases relied upon by Supreme Court concern Molineux evidence [*6]that the Appellate Division determined was properly admitted, and each case is distinguishable from the present appeal. In Herrera, the court properly admitted evidence regarding two March 1990 incidents in which "the defendant allegedly pointed a gun and/or threatened to kill the complainant" during a trial of charges relating to the defendant's "point[ing] a loaded handgun at the complainant and threaten[ing] to kill him" on April 28, 1990 (191 AD2d at 585). The incidents thus occurred approximately one month apart and concerned the same target.
In Richardson, the defendant was charged in relation to his "possession of a fully loaded and operable .38 caliber pistol near the residence of one Miriam Williamson," and the court properly admitted evidence of "the defendant's possession of [a] .25 caliber pistol and his discharge of [it] at Ms. Williamson's home shortly before his arrest nearby" (148 AD2d at 477). Although "shortly before" is not described, the full context of the decision indicates that the defendant's motive was informed by his "belie[f] [that Ms. Williamson] had shot his wife earlier that day" (id. [emphasis added]), suggesting that all the events occurred on the same day. Similar to Herrera, the Molineux evidence in Richardson happened close in time and concerned the same target.
Lastly, Chuang dealt with a lengthy and interconnected history of the defendant's gun possession, including related threats to his girlfriend and others in their social circle. The Molineux evidence there was admitted not only due to its "relevan[cy] to defendant's intent to use one of the weapons unlawfully" but also to "complete[] the narrative and provide[] necessary background information" (96 AD3d at 595; see id. [court gave "careful limiting instructions" to "minimize[] any prejudice"]).[FN5]
Here, not only were the incidents separated by nearly six months, but each occurred at a different location. Additionally, absent from the record is evidentiary support for any connection whatsoever between the 2011 offense and Cruz and Camarena. Accordingly, the prosecution's position fails on the initial question of relevancy (see Cass, 18 NY3d at 560), and consolidation was thus improper under CPL 200.20 (2) (b).
Moreover, even assuming that the 2010 offense was relevant to the later possession charges, its probative value was minimal. Given defendant's theory—that it was Camarena's gun—with respect to the 2010 offense, his mere association with a gun in relation to the 2011 offense resulted in distinct prejudice. Therefore, even assuming a proper intent basis under Molineux, prejudice outweighed the limited probative value (see CPL 200.20 [2] [b] ["proof of the first offense would be material and admissible as evidence in chief upon a trial of the second"] [emphasis added]).
Considering the imbalance between evident prejudice and at best faint relevance of proof in relating to the other offense, Supreme Court's consolidated trial of the two indictments under [*7]CPL 200.20 (2) (b) was an abuse of discretion and error.
2.
CPL 200.20 (2) (c) provides for discretionary consolidation of offenses "defined by the same or similar statutory provisions" (CPL 200.20 [2] [c]; see People v Lane, 56 NY2d 1, 7 [1982]). In examining the statute, the Court of Appeals has characterized subdivision (2) (c) as considerably broad—indeed, a "sweeping compass" (Shapiro, 50 NY2d at 754). Accordingly, "the legislative scheme introduce[d] cautions," contained in subdivision (3), "designed to alleviate the potential for prejudice" (id.). The Court in Shapiro thus observed that, as a result of subdivision (2) (c)'s breadth:
"CPL 200.20 (subd 3) declares that, when the joinability of offenses rests solely on the grounds specified in paragraph (c) of subdivision 2, 'the court, in the interest of justice and for good cause shown, may, upon application of either a defendant or the People, in its discretion order that any one of such offenses or groups of offenses be tried separately from the other or others.' Surely, 'the interest of justice' and 'good cause shown,' though elastic, are more than resounding phrases" (50 NY2d at 754).
As noted, the determination of whether consolidation is proper under CPL 200.20 (2) (c) is discretionary. "'[I]n all cases a strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses'" (People v Martinez, 165 AD3d 1288, 1290 [2d Dept 2018], quoting People v Mahboubian, 74 NY2d 174, 183 [1989] [two-defendant trial issue]). Accordingly, a court considering consolidation "weigh[s] 'the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage'" (id., quoting Lane, 56 NY2d at 8). The Court of Appeals has cautioned, however, that "[w]hile the trial courts must be afforded reasonable latitude in exercising discretion in these matters, we emphasize that compromise of a defendant's fundamental right to a fair trial free of undue prejudice as the quid pro quo for the mere expeditious disposition of criminal cases will not be tolerated" (Lane, 56 NY2d at 8).
CPL 200.20 (3) provides two examples of good cause to try joinable offenses separately:
"Good cause shall include but not be limited to situations where there is:
"(a) Substantially more proof on one or more such joinable offenses than on others and there is a substantial likelihood that the jury would be unable to consider separately the proof as it relates to each offense[, or]
"(b) A convincing showing that a defendant has both important testimony to give concerning one count and a genuine need to refrain from testifying on the other, which satisfies the court that the risk of prejudice is substantial."
The statute's examples are nonexhaustive ("shall include but not be limited to"), and courts therefore consider other factors as well. In People v Carlucci, this Court [*8]also considered whether "the evidence was easily segregable in the minds of the jurors" (196 AD3d 418, 419 [1st Dept 2021]). Additionally, in People v Daniels, the Third Department considered whether undue prejudice to the defendant resulted from risks of propensity inference and cumulative evidence (216 AD2d at 639-640; see People v Adames, 42 AD3d 328, 329 [1st Dept 2007] [finding the jury's acquittal on one charge and deadlock on other counts, as well as the court's sufficient jury instruction, demonstrated that the defendant was not prejudiced by the joinder and that the jury was able to segregate the evidence]; see also Martinez, 165 AD3d at 1290, citing Daniels, 216 AD2d at 640). Ultimately, the inquiry of consolidation or severance under CPL 200.20 (2) (c) is guided by "the interest of justice and good cause" (CPL 200.20 [3]; see Peter Preiser, Prac Commentaries, CPL 200.20 ["the statute still expressly provides that the basic standard for severance is the interest of justice and good cause shown"]).
A number of factors weigh toward a finding of undue prejudice here. First, there was a clear risk that the jury utilized an impermissible propensity inference. Defendant's association with a gun in the 2011 offense resulted—considering the defense theory regarding the 2010 offense—in patent prejudice. Moreover, near the very end of their summation, the People noted that the jury "may consider the evidence of how defendant has used guns" immediately after describing defendant as "a fugitive from the law . . . walking around, has a gun, a loaded gun." This occurred after the People, responding to defendant's theory that it was actually Camarena's gun involved in the 2010 offense, argued that Cruz and Camarena "are not the sort of people who are out packing guns on the regular." The prosecutor's encouragement of propensity inference as a method of reasoning thus aggravated the already extant prejudicial effect of consolidation.
Next, although the two offenses were distinct transactions that occurred months apart and at different locations, it cannot be fairly said that "the evidence was easily segregable in the minds of the jurors" (Carlucci, 196 AD3d at 419) where the trial court failed to give a limiting instruction to that effect.
In addition, although CPL 200.20 (3) contemplates a disparity in the evidence between the joined charges, the statute's examples are, as noted, nonexhaustive. The broader applicable notions of the interest of justice and good cause are also implicated where, as here, the evidence for both offenses is on the weaker side (see People v Daniels, 216 AD2d at 640 ["because the evidence is not overwhelming on any of the charges, and the danger of unfair prejudice arising from the consolidation of the two indictments so profound, defendant's right to a fair trial on each indictment was sorely compromised"], citing Lane, 56 NY2d at 8, and People v Pinkas, 156 AD2d 485, 486-487 [2d Dept 1989], lv denied 75 NY2d 816 [1990]).
Lastly, defendant suffered undue prejudice for the very same reason that consolidation was improper under CPL 200.20 (2) (b). Of course, the ultimate balancing under Molineux (and [2] [b]) concerns the "potential for undue prejudice to the defendant" (Cass, 18 NY3d at 560 [internal citations omitted]), and the concurrence agrees that consolidation was improper under that subsection. Inasmuch as the Court in Lane "emphasize[d] that compromise of a defendant's fundamental right to a fair trial free of undue prejudice as the quid pro quo for the mere expeditious disposition of criminal cases will not be tolerated," defendant's showing on the issue of prejudice under CPL 200.20 (2) (b) provides further support for denial of consolidation under CPL 200.20 (2) (c).
The public interest in judicial economy should nevertheless be weighed (see Mahboubian, 74 NY2d at 183-184). Importantly, here only two of thirteen witnesses—NYPD tape technician Fingall and firearms analyst Detective Bahm—testified on matters related to both indictments (see Martinez, 165 AD3d at 1290 ["separate trials would not have resulted in the duplication of evidence"]; cf. Mahboubian, 74 NY2d at 183 ["public policy favors joinder, because it . . . avoids the necessity of recalling witnesses"]). Additionally, the only other evidence relevant to both offenses was one jail phone call, call 2. The discussions of each offense, however, are substantively and temporally separated. Because the calls were already edited for redaction of unnecessary or inadmissible content, further parsing them for replay in two separate trials would have resulted in no appreciable additional burden. Accordingly, any economy gained through the consolidated trial was insignificant, at best.
Since defendant suffered undue prejudice from cumulative evidence and the risk of propensity inference during a consolidated trial that accomplished little with respect to public or judicial economy, a consolidated trial on the basis of CPL 200.20 (2) (c) was an abuse of discretion and error.
Notwithstanding the concurrence's suggestion to the contrary, the present conclusion is fully supported by the submissions before Supreme Court in the initial application for consolidation, not to mention defendant's subsequent applications. In contrast to the prosecution's lengthy argument in favor of consolidation under CPL 200.20 (2) (b), their initial application gave short shrift to consolidation under CPL 200.20 (2) (c) in three brief paragraphs. Relying simply on the similarity of the charges, the prosecution noted the general policy favoring joinder. Though the People acknowledged that "consolidation is warranted" "[u]nless the defendant can successfully show that joinder will unduly prejudice them," they flatly asserted that "consolidat[ion] would create no undue prejudice to the defendant." In opposition, defendant insisted strenuously that the specific factual circumstances of the two indictments would result, if consolidation [*9]were granted, in substantial prejudice, arguing, among other things, that:
"It would be extremely prejudicial to the defendant for the jury to hear that six (6) months after allegedly shooting someone, the defendant [wa]s rearrested on new gun charges, involving a different weapon than the weapon used six months prior. In addition[,] the probative value garnered is slight in light of the fact the two indictments involve different weapons, different locales, occurred at different times and otherwise share no commonality. There is no evidence proffered by the [P]eople that the defendant and George McL[l]oyd were ever arrested together or participated in a criminal enterprise.
"Consequently, there is a danger that the jury would be tempted to view the evidence of all collective incidents cumulatively and convict the defendant of all the charges based upon a perception that he has a penchant for possessing guns and therefore is guilty of all the weapons offenses."
The record contains neither a transcript of argument nor a reply from the prosecution, and Supreme Court's decision notes only the People's motion and defendant's opposition. Consequently, the "present[ation] to the court at the time consolidation was granted" (concurrence at 8)—as opposed to "review[] . . . in hindsight" (id.)—demonstrated that the interest of justice and good cause warranted denial of the application. Ultimately, although CPL 200.20 (2) (b) and (c) are independent bases for consolidation, here, the factual circumstances informing prejudice from consolidation were the same.
Finally, the cases cited by the concurrence are distinguishable. People v Davis (201 AD3d 508 [1st Dept 2022], lv denied 38 NY3d 1133 [2022]), for example, involved a single indictment of three knifepoint robberies of Manhattan small businesses which occurred, as indicated by the parties' briefs, on three consecutive mornings. There, "videotapes showed defendant in or near each of the three stores, and he was linked to all three robberies by physical evidence" (id. at 509). Given that "there was no material variance in the quantity of proof" and "defendant failed to make a sufficient showing for discretionary severance" (id. at 508-509), Davis is not inconsistent with the present holding. The other cases relied upon by the People or cited by the concurrence (see e.g. People v Ndeye, 159 AD2d 397 [1st Dept 1990], lv denied 76 NY2d 793 [1990] [two "transactions where, on each occasion, the defendant entered an automobile and threatened the driver with a gun or knife while robbing him," with "strong identification evidence in both cases"]) similarly fail to address the particulars of the present appeal—most significantly, the consequential prejudice suffered with respect to the 2010 offense by the mere suggestion of defendant's connection to the gun in the unrelated 2011 offense.
B.
When separate indictments or transactions are joined for trial, the risk of undue prejudice may in general be remedied by [*10]appropriate limiting instructions from the trial court (see e.g. Chuang, 96 AD3d at 595 [court gave "careful limiting instructions" that "minimized any prejudice"]). Limiting instructions are provided because "[i]t is axiomatic that propensity evidence invites a jury to misfocus, if not base its verdict, on a defendant's prior crimes rather than on the evidence—or lack of evidence—relating to the case before it" (People v Rojas, 97 NY2d 32, 36-37 [2001]; see People v Resek, 3 NY3d 385, 389 [2004]; People v Allweiss, 48 NY2d 40, 46 [1979] [Molineux rule "based on policy and not on logic"]). Appropriate limiting instructions thus restrain the logic of "conclud[ing] from a defendant's prior crimes" or other charges "that he is inclined to act criminally" (People v Arafet, 13 NY3d 460, 465 [2009]).
Although "[j]urors are presumed to have followed a trial judge's limiting instructions" (People v Morris, 21 NY3d 588, 598 [2013]), instructions are not a cure-all. Indeed, the nature of separate incidents may be such that undue prejudice results whether or not such instructions are provided (see e.g. People v Santiago, 190 AD3d 502 [1st Dept 2021] [convictions reversed based on improper consolidation despite court's instruction to consider the evidence separately]).
In proceedings seemingly up until the court's charge of the jury, it was presumed that appropriate limiting instructions were required. For example, the prosecutor's initial submission observed that "repeated limiting instructions" as to how the jury may and may not use evidence of one crime with respect to another would be appropriate to address the potential for undue prejudice. This position was similarly put forward by the prosecution during subsequent oral argument. Additionally, in argument prior to the trial court's charge of the jury, the defense argued that limiting instructions would be insufficient to address the resulting prejudice, thus assuming an instruction's applicability.
Although the issue is unpreserved as a result of defense counsel's failure to propose limiting instructions at the proper juncture, we reach it here in the interest of justice (see People v Greene, 306 AD2d 639, 642-643 [3d Dept 2003] ["failure to give the jury limiting instructions with respect to defendant's prior bad acts denied defendant the right to a fair trial and warrants a reversal of the judgment as a matter of discretion in the interest of justice notwithstanding defense counsel's failure to preserve said issue by either requesting said instructions or objecting to the court's failure to so charge"], lv denied 100 NY2d 594 [2003]; People v Johnson, 114 AD2d 210, 213 [1st Dept 1986] ["prejudice to the defendant is underscored here, by the court's omission to give proper limiting instructions describing the proper use of the uncharged crimes evidence . . . . Assuming, arguendo, that the error concerning the lack of proper limiting instructions was not preserved, we reach it in the interest of justice[*11]"]; see also People v Blackwood, 147 AD3d 462, 462 [1st Dept 2017]; People v Turner, 143 AD3d 582, 582 [1st Dept 2016]).
The nature of the evidence on the separate offenses rendered appropriate limiting instructions especially vital under the circumstances. Notwithstanding that two discrete criminal transactions were presented in a single trial, the court did not direct the jury to consider the evidence of each alleged incident separately. Instead, and without appropriate qualification, the court directed the jury to, among other things, "consider all the evidence" in reaching their verdict.
Accordingly, Supreme Court's failure to give appropriate instructions, limiting the jury's consideration of evidence to the separate offenses and proscribing use of the proof as evidence of propensity or predisposition, was further error.
C.
"[E]very error of law (save, perhaps, one of sheerest technicality) is, ipso facto, deemed to be prejudicial and to require a reversal, unless that error can be found to have been rendered harmless by the weight and the nature of the other proof" (People v Crimmins, 36 NY2d 230, 241 [1975]). "[U]nless the proof of the defendant's guilt, without reference to the error, is overwhelming, there is no occasion for consideration of any doctrine of harmless error" (id.).
As observed by the Court of Appeals in People v Mairena:
"When 'an appellate court has satisfied itself that there was overwhelming proof of the defendant's guilt, its inquiry does not end there . . . . Further inquiry must . . . be made by the appellate court as to whether, notwithstanding the overwhelming proof of the defendant's guilt, the error infected or tainted the verdict,' and '[a]n evaluation must therefore be made as to the potential of the particular error for prejudice to the defendant'" (34 NY3d 473, 485 [2019], quoting Crimmins, 36 NY2d at 242).
"When an error is not constitutional in nature, the 'error is prejudicial . . . if the appellate court concludes that there is a significant probability . . . that the jury would have acquitted the defendant had it not been for the error or errors which occurred'" (id., quoting Crimmins, 36 NY2d at 242). "If the error at issue is of a constitutional dimension, it is harmless when 'there is no reasonable possibility that the error might have contributed to defendant's conviction'" (id., quoting Crimmins at 237).
Since the indictments were improperly tried together, the admission of facts related to the second indictment during trial of the first indictment (and vice versa) essentially amounts to a Molineux error. For example, in People v Arafet, the trial court admitted evidence of a prior trailer theft, which the People argued was proper "because of the nature of the crime—a specialized one, that required unusual skills, knowledge and access to the means of committing it" (13 NY3d at 466). The Court of Appeals disagreed, however, and held that admitting evidence of that earlier incident "violated the [*12]Molineux rule," inasmuch as "[t]his was not a crime 'so unique that the mere proof that the defendant had committed a similar act would be highly probative of the fact that he committed the one charge'" (id., quoting People v Condon, 26 NY2d 139, 144 [1970]). When analyzing whether the error was harmless, the Court examined whether there was a "'significant probability . . . that the jury would have acquitted the defendant had it not been for the error'" (id. at 467, quoting Crimmins, 36 NY2d at 242). A Molineux error is thus examined under the nonconstitutional standard (see id.; see also People v Frankline, 27 NY3d 1113, 1115 [2016]; cf. People v Grant, 7 NY3d 421, 424 [2006] [claim of error "must be reviewed under the standard applicable to nonconstitutional harmless error" where defendant "never raised any constitutional claim before the trial court"]).
Here, the great majority of the evidence received by the jury concerned the 2010 offense. Besides the testimony of Cruz and Camarena, however, there was no direct evidence that defendant possessed or fired the gun.[FN6] The strongest remaining evidence was provided by calls 3 and 6. In call 3, defendant said "that's good" based on his belief that he had been charged with attempted assault; and in call 6, he said that he was "glad that . . . this guy wasn't hurt" and that "there's no physical injury." Considering the gravity of a criminal prosecution and well-known potential for false convictions (see e.g. People v Tiger, 32 NY3d 91, 114-115 [2018] [Wilson, J., dissenting]), defendant's statements may alternatively be interpreted as relief that the allegations against him were less severe in a relative sense. Put differently, the calls are hardly direct or overwhelming evidence.
Assuming arguendo that the evidence admitted regarding the 2010 offense was, in the aggregate, overwhelming, there is under the circumstances "a significant probability . . . that the jury would have acquitted the defendant had it not been for" consolidation with the 2011 offense and the failure to provide appropriate limiting instructions (id. at 242).
As to the 2011 offense, the prosecution similarly relied on indirect evidence from defendant's calls. The strongest passage is contained in call 2, in which defendant stated, "I'm glad I got that thing up off me." This passage goes on to suggest that there was some sort of transaction but also includes defendant's statement, "I can't take it . . . . If my shit wasn't what it is, I would have took it up off him."
Even applying reasonable inferences regarding the substance of defendant's comments in the call's full context, "the quantum and nature of proof, excising the error," was not plainly "so logically compelling and therefore forceful . . . as to lead the appellate court to the conclusion that a jury composed of honest, well-intentioned, and reasonable men and women on consideration of such evidence would almost certainly have convicted the defendant" (Crimmins, 36 NY2d [*13]at 241-242 [internal quotation marks omitted]). In any event, assuming arguendo that the evidence admitted regarding the 2011 offense was overwhelming, there is similarly a significant probability that the jury would have acquitted on the 2011 offense but for consolidation with the 2010 offense and the failure to provide appropriate limiting instructions (see id. at 242).
In view of the defense theory as well as the quality and sum of evidence regarding the 2010 offense—including the fact that no gun was recovered—defendant's mere association with a gun in relation to the 2011 offense was severely prejudicial. As to the 2011 offense, the cumulative evidence provided by accounts of the 2010 offense, as well as the prosecutor's summation, rendered limiting instructions especially vital.
III.
Given the hazards presented by potential propensity inference and the undue prejudice caused by cumulative evidence, the compounded effect of a consolidated trial and failure to provide appropriate limiting instructions was not harmless as to either of the offenses.[FN7] Separately, and as the concurrence would hold, Supreme Court's failure to give appropriate limiting instructions requires reversal as well.
The convictions should thus be reversed, and the matter remanded for a new trial of each indictment.
Accordingly, the judgment of the Supreme Court, New York County (Robert M. Mandelbaum, J.), rendered January 3, 2018, convicting defendant, after a jury trial, of attempted murder in the second degree, attempted assault in the first degree, and three counts of criminal possession of a weapon in the second degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 25 years to life, should be reversed, on the law and as a matter of discretion in the interest of justice, to the extent of vacating the convictions under indictment number 1335/11 and indictment number 3389/16, and the matter remanded for a new trial of each indictment.
All concur except Webber, J.P. and Friedman J., who
concur in a separate Opinion by Webber J.P.

WEBBER, J. (concurring)
 

While I concur with the majority that the failure of the trial court to provide appropriate limiting instructions requires reversal of the conviction and remand for a new trial, I disagree that the indictments were not properly consolidated.
Defendant Tommy Davis was indicted in two separate indictments in connection with two separate incidents involving his use or possession of a firearm. By indictment No. 1335/11, defendant was charged with attempted murder in the second degree (Penal Law §§ 110.00, 125.25[1]), attempted assault in the first degree (Penal Law §§ 110.00, 120.10[1]), and two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03[1][b], [3] [possession of loaded firearm outside the home and with intent to use unlawfully against another]). Specifically, it was charged that on October 7, 2010, at 29 West 119th Street, during an argument[*14], defendant intentionally shot Juan Camarena, the assistant of Jose Cruz, who had been hired to replace defendant as a building superintendent. The bullet hit Camarena's belt and the cell phone in his pocket.
By indictment No. 2447/12, defendant was charged with two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03[1][b], [3]). On March 22, 2011, defendant and codefendant George McLloyd were observed standing outside of a bodega at the intersection of East 117th Street and Madison Avenue when they were approached by police. McLloyd was searched and a loaded firearm was recovered from his possession.[FN8]
Procedural Background
By motion dated July 17, 2012, the People moved to consolidate the indictments, arguing that the charged offenses were "the same or similar in law" and that "the evidence of possession of a firearm on October 7, 2010 would be relevant and admissible to prove the defendant's possession of a weapon on March 22, 2011 under the theory that he intended to use the weapon unlawfully against another." The People asserted that "a jury would have, especially guided by appropriate limiting instructions, very little problem segregating problems from one incident as to the evidence from another."
The defense opposed the motion, arguing among other things, that a joint trial
would discourage the jurors from considering separately the proof as it related to each case; that proof of one offense would suggest to the jury that defendant committed the other offense; and that the proof of one offense was different and weaker, thus substantially prejudicing defendant.
Supreme Court granted the motion, concluding that:
"consolidation [was] permissible, if the offenses are 'the same or similar in law.' Both indictments charge the defendant, with criminal possession of a weapon in the second degree under the same theories. Furthermore, the evidence of possession of a firearm on October 7, 2010 would be relevant and admissible to prove that the defendant's possession of a weapon on March 22, 2011 under the theory that he intended to use the weapon unlawfully against another."
At trial, defense counsel renewed his opposition to consolidation. The trial court adhered to the prior ruling.
Discussion
I concur with the majority that consolidation was not proper pursuant to CPL 200.20(2)(b). However, in my opinion, Supreme Court's exercise of its discretion in granting consolidation pursuant to CPL 200.20(2)(c) was proper.
Pursuant to CPL 200.20(2)(c), two offenses are joinable when: "Even though based upon different criminal transactions, and even though not joinable pursuant to paragraph (b), such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law. . . ."
Thus, when joinder of offenses arising from separate criminal transactions is based on the fact that the offenses arise from the same or similar penal statutes, the court "in the interest of justice [*15]and for good cause shown" may, in its discretion, grant a motion to sever the offenses (CPL 200.20[3]; People v Lane, 56 NY2d 1, 7 [1982]).
As noted by the majority, "'in all cases a strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses'" (People v Martinez, 165 AD3d 1288, 1290 [2d Dept 2018], quoting People v Mahboubian, 74 NY2d 174, 183 [1989]); see also People v Paraschiv, 169 AD2d 739 [2d Dept 1991], lv denied 77 NY2d 909 [1991]).
Prior rulings of the Court of Appeals and the various departments, including this Court, have found joinder appropriate under circumstances similar to those here (see e.g. People v Davis, 201 AD3d 508, 508-509 [1st Dept 2022], lv denied 38 NY3d 1133 [2022] [the trial court providently exercised its discretion in denying the defendant's motion for severance of his charges related to three store robberies; the charges were joinable as legally similar and the defendant failed to make a sufficient showing for a discretionary severance]; People v Carlucci, 196 AD3d 418, 419 [1st Dept 2021], lv denied 37 NY3d 1026 [2021] [the court providently exercised its discretion by granting the People's motion to consolidate three indictments charging six burglaries]; People v Vickers, 148 AD3d 1535, 1536-1537 [4th Dept 2017], lv denied 29 NY3d 1088 [2017][convictions from two indictments based upon allegations that the defendant sexually assaulted or abused five underage victims]; People v Renaud, 137 AD3d 818, 819-820 [2d Dept 2016], lv denied 27 NY3d 1074 [2016] [the trial court properly exercised its discretion in consolidating two indictments for single trial where both indictments charged offenses relating to sex offenses; specifically, one charged the defendant with second-degree rape of his stepdaughter and the other charged him with first-degree course of sexual conduct against a child, his stepniece]; People v Haywood, 124 AD3d 798, 800-801 [2d Dept 2015], lv denied 25 NY3d 1202 [2015] [charges in indictment of rape in the first degree, criminal sexual act in the first degree, attempted criminal sexual act in the first degree, assault in the second degree, assault in the third degree, robbery in the third degree, and unlawful imprisonment in the second degree were properly joined; "[t]he fact that sex crimes were involved in both incidents did not provide a sufficient basis to require a severance"]; People v Screahben, 35 AD3d 246, 246 [1st Dept 2006], lv denied 8 NY3d 884 [2007] [the motion court properly granted the People's motion to consolidate the three indictments; three knifepoint robberies were properly joined as legally similar pursuant to CPL 200.20[2][c]; there was no material variance in the quantity of proof, the evidence was easily segregable in the minds of the jurors, and defendant failed to make a convincing showing that he had important testimony to give concerning some counts and a strong need to refrain [*16]from testifying as to others]).
Contrary to the majority's assertions, the People's application did not give "short shrift" to consolidation under CPL 200.20(2)(c). In their application, the People stated:
"defendant's indictments are joinable under CPL section 200.20(2)(c) because both indictments involve charges that are similar in law. Here, defendant is charged under each indictment with the same two crimes: Criminal Possession of a Weapon in the Second Degree under subsection (1)(b) and (3) of section 265.03 of the Penal Law. Consequently, the jury in each matter would have to receive identical instruction from the Court and would have to apply many of the same legal principles. Consequently, efficiency and judicial economy favor, consolidating these cases. There is a long-standing policy, favoring the joint trial of cases 'because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses.' Unless the defendant can successfully show that joinder will unduly prejudice them, consolidation is warranted." This argument demonstrated that consolidation was properly relied upon by Supreme Court in granting consolidation. It cannot be said, as suggested by the majority that "the interest of justice and good cause warranted denial of the application." Further, it was clearly contemplated at the time the application was granted that a limiting instruction would be given at trial.
The majority points to a number of factors that it asserts support a finding of undue prejudice as a result of the consolidation of the two indictments. First, it argues that there was a clear risk that the jury utilized an impermissible propensity inference. Specifically, that defendant's association with a gun in the 2011 offense resulted in patent prejudice. However, there is nothing in the record to suggest that the jury would infer any propensity on the part of defendant. While the majority points to statements in the People's summation—which of course was not evidence—that the jury "may consider the evidence of how defendant has used guns" immediately after describing defendant as "a fugitive from the law . . . walking around, has a gun, a loaded gun," as somehow "encouraging" an inference of propensity, that is purely speculative. Indeed, in People v Ndeye (159 AD2d 397, 398 [1st Dept 1990], lv denied 76 NY2d 793 [1990]), this Court held that the defendant's speculative complaint that the jury may have convicted him based upon a belief that he had a propensity to commit an armed robbery was groundless, considering that the proof of each crime was "separately presented, uncomplicated, and easily segregable in the jury's mind." We stated, "[t]he trial court properly exercised its discretion in granting the People's motion to consolidate two indictments, each charging robbery in the first degree, [since] the two indictments arose from separate, uncomplex criminal transactions, where, on each occasion, the defendant [*17]entered an automobile and threatened the driver with a gun or knife while robbing him" (id. at 397).
Similarly, the majority's conclusion that although the two offenses were distinct transactions that occurred months apart and at different locations, "it cannot be fairly said that 'the evidence was easily segregable in the minds of the jurors,'" is also speculative and without merit (quoting Carlucci at 419). As stated previously, the first incident involved defendant intentionally shooting Juan Camarena. The second incident involved defendant and another individual unlawfully possessing a loaded firearm. Though these incidents occurred months apart and at different locations, the majority does not explain why the jury would not be able to segregate the evidence of an incident where defendant is alleged to have acted alone and shot at two individuals and one where defendant is alleged to have been with another individual in the possession of a loaded firearm. Here, the record shows that "there was no material variance in the quantity of proof for the separate incidents [and] the evidence as to the two [incidents] was presented separately and was readily capable of being segregated in the minds of the jury [since] [t]he incidents occurred on different dates and the evidence as to each incident was presented through entirely different witnesses" (People v Ford, 11 NY3d 875, 879 [2008]). The evidence relating to each incident was "separately presented, uncomplicated and easily distinguishable" (People v Mero, 22 AD3d 1242, 1250 [3d Dept 2003], citing People v St. Ives, 145 AD3d 1185, 1186 [3d Dept 2016], lv denied 29 NY3d 1036 [2017]).
With respect to the 2010 offense, the People submitted testimony from Camarena that he saw defendant shoot him, testimony from Jose Cruz that he saw defendant point a gun at Camarena and heard a gunshot. The People also submitted video surveillance placing defendant at the scene. A bullet was also recovered from the scene, albeit no gun was recovered. The fact that a firearm was not recovered and introduced into evidence at trial does not defeat a conviction for an attempt to commit the crime of murder (see People v Samba, 97 AD3d 411, 414-415 [1st Dept 2012], lv denied 20 NY3d 1065 [2013] [no gun or ballistics evidence recovered, those elements may be proved circumstantially through eyewitness testimony and surrounding circumstances]).
With respect to the 2011 offense, the People submitted evidence that a loaded and operable firearm was recovered from McLloyd while he and defendant were standing in front of a bodega. The People also submitted a series of telephone calls made by defendant from Rikers Island following his arrest, in which, in sum and substance, he admitted that he passed the firearm to McLloyd. On the recording, defendant states, that one officer "told the other one, [']he probably passed that to him[']," but defendant did not think the officers saw "the whole transaction." Defendant also suggests [*18]that he was sorry that McLloyd was arrested, however, if he had been found with the firearm, stating, "[i]t would have been all over." Defendant also stated, "I'm glad I got that thing up off me." "I ain't want [McLloyd] to get it," but "[s]omebody had to have that mother fucker" because "I can't have it."
Contrary to the argument by the majority, the evidence for both offenses, cannot be said to be "on the weaker side." This is not the case as in People v Daniels (216 AD2d 639, 640 [3d Dept 1995]) which is cited by the majority, "where the evidence is not overwhelming on any of the charges, and the danger of unfair prejudice arising from the consolidation of the two indictments so profound, defendant's right to a fair trial on each indictment was sorely compromised."
Further, even assuming, as suggested by the majority, that there was some disparity in the quantity of proof for one incident as opposed to the other, we have held that even "[w]hile there was additional evidence supporting [one] incident, there was no material variance in the quantity of proof" presented with respect to the various offenses (Carlucci, 196 AD3d at 419; People v Cannon, 306 AD2d 130 [2003], lv denied 1 NY3d 539 [2003], citing Ndeye, 159 AD2d at 397]).
I strongly disagree with the majority's conclusion that "defendant suffered undue prejudice from cumulative evidence and the risk of propensity inference during a consolidated trial that accomplished little with respect to public or judicial economy" and that "consolidation was an abuse of discretion and error."
The majority appears to be reviewing the consolidation in hindsight and conflates the showing made in support of consolidation with the evidence which was ultimately presented at trial. It points to what it perceives the evidence at trial to have been rather than what was presented to the court at the time consolidation was granted. Indeed, the majority states, "defendant suffered impermissible prejudice here as a result of (1) the nature and quantum of the evidence presented and (2) the specific respective theories of the prosecution and the defense"[emphasis added]. It then concludes "Supreme Court thus abused its discretion and committed error in trying the indictments together." In my opinion, it was not error to grant consolidation, the error and any prejudice to defendant was in the trial court not providing a limiting instruction in accordance with the Criminal Jury Instructions for Multiple Separate Transactions of Same Crime (CJI2d [NY]).[FN9]
I concur with the majority that although defendant's argument that the court erred in not giving an appropriate limiting instruction is unpreserved, we should reach it in the interest of justice (see People v Greene, 306 AD2d 639, 642-643 [3d Dept 2003], lv denied 100 NY2d 594 [2003]; People v Johnson, 114 AD2d 210, 213 [1st Dept 1986]).
In my opinion, the trial court failed to "make sufficiently clear to the jury that the evidence to each incident was to [*19]be considered separately" (see People v Harris, 29 AD3d 387, 388 [1st Dept 2006], lv denied 7 NY3d 757 [2006]). While the trial court addressed the offenses individually and instructed the jury that the People had the burden of proving each element of each crime beyond a reasonable doubt, this was insufficient under the facts of this case. The trial court should have made clear to the jury that they were not to infer from the number of charged crimes that defendant was guilty of any one or more of those crimes or that he had a propensity to commit those crimes. Contrary to the arguments by the People, the fact that the jury acquitted with respect to the fourth count of the indictment charging criminal possession of a weapon in the second degree, does not demonstrate that it had, in fact, considered the various charges separately. Indeed, the record indicates that in moving for consolidation the People stated that "a jury would have, especially guided by appropriate limiting
instructions, very little problem segregating problems from one incident as to the evidence from another."
Under the facts presented, the trial court should have given a limiting instruction.
Judgment, Supreme Court, New York County (Robert M. Mandelbaum, J.), rendered January 3, 2018, reversed, on the law and as a matter of discretion in the interest of justice, to the extent of vacating the convictions under indictment number 1335/11 and indictment number 3389/16, and the matter remanded for a new trial of each indictment.
Opinion by Rodriguez, J. All concur except Webber, J.P. and Friedman, J.
Who concur in a separate Opinion by Webber J.P.
Webber, J.P., Friedman, Gonzalez, Rodriguez, Pitt-Burke, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 13, 2024

Footnotes

Footnote 1: In its submission on the motion, the prosecution acknowledged that appropriate limiting instructions would be proper upon consolidation. In opposition, defendant contended, among other things, that limiting instructions would not be sufficient to address the "prejudice, undue speculation and bias" arising from consolidation.

Footnote 2: The first trial ended in a mistrial as a result of the jury's failure to reach a unanimous verdict.

Footnote 3: Call 3 contains a brief exchange of information about a date on which both defendant and George McLloyd had a recent court appearance. This exchange, however, does not mention or discuss any substance of the 2011 offense, and the record suggests defendant stipulated that his voice was on each call.

Footnote 4: See also Daniels, 216 AD2d at 640 ("If the jury believed the first two victims' testimony that they did not agree to engage in intercourse with defendant, it may have considered his commission of those crimes, to the extent that they establish a predisposition to commit rape, as proof that he must have perpetrated the third as well, despite several discrepancies in the third victim's description of the vehicle involved in that crime, and genuine weaknesses in the identification testimony. Conversely, if the jury was persuaded that defendant committed the third attack—which undeniably was not consensual—that finding undoubtedly would have colored its perceptions of the first two incidents, making it more difficult to accept defendant's claims that, on those occasions, intercourse was consensual") (emphasis added).

Footnote 5: The authority on which the prosecution relies is likewise distinguishable. In their brief, the prosecution relies principally on People v Bailey (32 NY3d 70 [2018]), People v Denson (26 NY3d 179 [2015]), People v Munger (24 NY2d 445 [1969]), People v James (170 AD3d 477 [1st Dept 2019]), and People v Greene (166 AD2d 374 [1st Dept 1990]), each of which considered evidence either more clearly connected to the case-in-chief or admissible under another Molineux exception (see Bailey, 32 NY3d at 83 ["testimony describ[ing] how [Bloods gang] members are identified and briefly discuss[ing] how carrying out an act of violence on behalf of a member might allow another member to rise in the gang's hierarchy" was "probative of defendant's motive and intent to join the assault on complainant, and provided necessary background information"], citing People v Kims, 24 NY3d 422, 438 [2014] ["Evidence regarding gang activity can be admitted to provide necessary background"]; Denson, 26 NY3d at 185-186 [evidence regarding defendant's prior sodomy conviction relating to conduct with his stepdaughter was relevant to defendant's intent where "the People's expert opined," among other things, "that defendant was reliving his relationship with his stepdaughter through his behavior toward the victim in this case"]; Munger, 24 NY2d at 449 [because bribery arose out of defendants-appellants' narcotics operations, "much of the evidence concerning the appellants' trafficking in narcotics would be admissible on the trial of the bribery charge to prove motive and intent, and, conversely, the evidence concerning the bribery was admissible as corroboration of the narcotics charge"]; James, 170 AD3d at 477-478 [the defendant's statements regarding uncharged crimes admitted as "probative on the issue of defendant's intent to act in concert with his cousin, particularly where defendant asserted that he did not share his cousin's intent to commit a gunpoint robbery," since the defendant "admitted that he and his cousin had planned, but were unable to commit, another robbery immediately before the charged robbery, and that they committed the charged robbery as a substitute for the planned robbery"] [emphasis added]; Greene, 166 AD2d at 374-375 ["various larceny, false instrument, and insurance fraud offenses were joinable with each other" under subsection (2) (b) because "the proof underlying these offenses was material to the homicide charges, since it was indicative of defendant's willingness to use the children for economic gain, and tended to establish motives and negate any claim that the deaths were accidental"]).

Footnote 6: As noted above, defendant's theory of the 2010 offense was that the fired gun was not defendant's but Camarena's, that Camarena brought it with him because Cruz had told him about Cruz's prior interaction with defendant in the building, and that the gun was hidden on the roof.

Footnote 7: The three other issues raised on appeal—ineffective assistance of defendant's trial counsel, the prosecutor's statements in summation, and the excessiveness of the sentence—are consequently rendered academic.

Footnote 8: The charges were ultimately dismissed as to McLloyd as the product of an illegal search.

Footnote 9: As I am of the opinion that consolidation was proper, I need not address the People's argument that any error in consolidation was harmless error.